# No. 23-15903

In the

# United States Court of Appeals
# for the Ninth Circuit

———————

THERMOLIFE INTERNATIONAL, LLC, ET AL.,

*Plaintiffs–Appellants*,

v.

BPI SPORTS, LLC,

*Defendant–Appellee.*

———————

On appeal of right from the United States District Court
for the District of Arizona, No. 2:20-cv-02091-SPL

———————

## ANSWERING BRIEF OF APPELLEE BPI SPORTS, LLC

———————

Robert F. Parsley
Meredith C. Lee
MILLER & MARTIN PLLC
832 Georgia Ave., Ste. 1200
Chattanooga, TN 37402
T: (423) 756-6600
bob.parsley@millermartin.com
meredith.lee@millermartin.com

*Counsel for Defendant–Appellee
BPI Sports, LLC*

October 11, 2024

## DISCLOSURE STATEMENT

Under Fed. R. App. P. 26.1, BPI Sports, LLC states that it has a parent corporation, Hi-Tech Pharmaceuticals, Inc., and that no publicly held corporation owns 10% or more of its stock.

*s/ Robert F. Parsley*

MILLER & MARTIN PLLC

*Counsel for Defendant–Appellee*
*BPI Sports, LLC*

TABLE OF CONTENTS

Disclosure Statement ...................................................................ii

Table of Authorities....................................................................v

Jurisdictional Statement............................................................1

Statement of Issues .....................................................................1

Statement of Addendum .............................................................1

Statement of the Case .................................................................2

   I.   Factual background. ...........................................................2

       A.   ThermoLife litigates frequently to "police" the dietary-supplement market. ...............................................2

       B.   ThermoLife filed eight, mostly baseless Lanham Act lawsuits in Arizona. ...............................................5

   II.   Procedural history.............................................................11

       A.   ThermoLife sued BPI in Arizona, and BPI filed a different lawsuit against ThermoLife in Florida..................11

       B.   After ThermoLife's multi-case litigation strategy in Arizona suffered setbacks, it voluntarily dismissed its Arizona lawsuit against BPI....................................12

       C.   ThermoLife refiled its lawsuit against BPI in Florida, but it was transferred back to Arizona over ThermoLife and Muscle Beach's objection....................................15

       D.   The district court dismissed ThermoLife and Muscle Beach's claims against BPI with prejudice, and this Court affirmed.......................................................15

   III.   Rulings presented for review. .........................................17

       A.   The district court held that BPI is entitled to recover its attorneys' fees under the Lanham Act and Federal Rule of Civil Procedure Rule 41(d). ................................17

           1.   The district court awarded fees for this action under 15 U.S.C. § 1117(a) because this was an "exceptional case." ...............................................18

      2.   The district court awarded fees for the previous action under Rule 41(d) because it was "exceptional" and litigated in bad faith.................................19

  B.  The district court awarded BPI $454,339 in reasonable attorneys' fees.................................20

Summary of Argument.................................20

Argument.................................23

  I.  The district court reasonably deemed this case exceptional and awarded BPI attorneys' fees under 15 U.S.C. § 1117(a)......23

    A.  The Lanham Act gives courts discretion to award attorneys' fees in "exceptional cases.".................................23

    B.  The district court reasonably found this entire litigation to be "exceptional.".................................25

      1.   The district court reasonably found that ThermoLife and Muscle Beach engaged in impermissible forum-shopping.................................26

      2.   The district court reasonably found that ThermoLife's case against BPI was part of a broader pattern of unreasonable litigation conduct.................................33

      3.   The district court reasonably found that ThermoLife and Muscle Beach's Lanham Act claims were objectively unreasonable.................................35

      4.   The district court reasonably found that awarding fees promotes considerations of compensation and deterrence.................................36

      5.   ThermoLife and Muscle Beach's arguments against the exceptional-case finding lack merit.................................36

      6.   BPI is entitled to recover its fees for the prior appeal.................................44

  II.  The district court correctly and reasonably awarded BPI attorneys' fees under Rule 41(d).................................47

A. The Circuits disagree over, and this Court has not decided, whether attorneys' fees are awardable under Rule 41(d). ............................................................. 48

B. The Court should hold that attorneys' fees are awardable under Rule 41(d) when an underlying statute provides for attorneys' fees. ................................... 52

C. The Court should hold that attorneys' fees are available under Rule 41(d) when the previous action was litigated in bad faith. ............................................. 60

D. The district court reasonably found that the previous action was "exceptional" and litigated it in bad faith. ......... 62

III. The amount of the fee award is reasonable and should be affirmed. ...................................................... 63

A. Itemizations of the amounts charged and the district court's reductions. ................................................ 64

1. Amounts charged by BPI. ............................... 64

2. District court's reductions and award. ........................ 66

B. ThermoLife and Muscle Beach's scattershot objections to the fee amount lack merit. ................................. 67

Conclusion ........................................................ 70

Statement of Related Cases ................................... 72

Certificate of Compliance ..................................... 73

Addendum ..................................................... A-1

Table of Contents ........................................... A-1

15 U.S.C. § 1117 ........................................... A-2

Fed. R. Civ. P. 41 ......................................... A-5

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alliance for Good Gov't v. Coalition for Better Gov't,*
998 F.3d 661 (5th Cir. 2021) ............................................................... 45

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
421 U.S. 240 (1975) .......................................................................... 61

*AMF, Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979) ............................................................ 25

*Anders v. FPA Corp.,*
164 F.R.D. 383 (D.N.J. 1995) ........................................................... 59

*Andrews v. Am.'s Living Centers, LLC,*
827 F.3d 306 (4th Cir. 2016) .................................. 49–51, 54, 56, 57, 59

*Ariz. Med. Billing Inc. v. FSIX LLC,*
17-cv-04742, 2019 WL 13194907 (D. Ariz. Jan. 22, 2019).................. 58

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
548 U.S. 291 (2006) .......................................................................... 59

*Baker Botts L.L.P. v. ASARCO LLC,*
576 U.S. 121 (2015) .......................................................................... 53

*Bright v. Bechtel Petroleum, Inc.,*
780 F.2d 766 (9th Cir. 1986) ............................................................ 26

*Campbell v. Davol, Inc.,*
620 F.3d 887, 892 (8th Cir. 2010) ..................................................... 39

*Classic Media, Inc. v. Mewborn,*
532 F.3d 978 (9th Cir. 2008) ............................................................ 24

*Committee for Idaho's High Desert, Inc. v. Yost,,*
    92 F.3d 814 (9th Cir. 1996) ................................................................ 45

*Design Basics, LLC v. Lexington Homes, Inc.,*
    858 F.3d 1093 (7th Cir. 2017) .............................................................. 4

*Dogherra v. Safeway Stores, Inc.,*
    679 F.2d 1293 (9th Cir. 1982) ............................................................ 61

*EOS GMBH Electro Optical Sys. v. DTM Corp.,*
    00-cv-1230, 2002 WL 345366785 (C.D. Cal. Mar. 18, 2002 ................ 58

*Esposito v. Piatrowski,*
    223 F.3d 497 (7th Cir. 2000) ................................ 50, 51, 54, 55, 58, 59

*Esquivel v. Arau,*
    913 F. Supp. 1382 (C.D. Cal. 1996) ............................................... 52–56

*Evans v. Safeway Stores, Inc.,*
    623 F.2d 121 (8th Cir. 1980) .............................................................. 49

*Garza v. Citigroup Inc.,*
    881 F.3d 277 (3d Cir. 2018) ................................................ 49, 50, 54, 59

*Geiger v. Creative Impact Inc.,*
    18-cv-01443, 2020 WL 3545560 (D. Ariz. June 30, 2020) ................... 41

*Hacopian v. U.S. Dep't of Labor,*
    709 F.2d 1295 (9th Cir. 1983) ............................................................ 56

*Horowitz v. 148 S. Emerson Assocs. LLC,*
    888 F.3d 13 (2d Cir. 2018) ................................................ 50, 53–56, 60

*In re Schwartz-Tallard,*
    803 F.3d 1095 (9th Cir. 2015) ............................................................ 46

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.,*
    407 F.3d 1027 (9th Cir. 2005) ............................................................ 41

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC,*
  68 F.4th 1203 (9th Cir. 2023)................................................45

*Kamal v. Eden Creamery, LLC,*
  88 F.4th 1268 (9th Cir. 2023)...............................................55

*Kent v. Bank of Am., N.A.,*
  518 F. App'x 514 (8th Cir. 2013) .........................................49

*Key Tronic Corp. v. United States,*
  511 U.S. 809 (1994) ...........................................................52

*Kiva Kitchen & Bath, Inc. v. Capital Distrib., Inc.,*
  681 F. Supp. 2d 807 (S.D. Tex. 2010).............................45, 46

*LegalForce, Inc. v. LegalZoom.com, Inc.,*
  18-cv-07274, 2019 WL 1170777 (N.D. Cal. Mar. 13, 2019) ................57

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  572 U.S. 118 (2014) .......................................................40, 41

*Lincoln Harbor Enters., LLC v. Hartz Mountain Indus., Inc.,*
  19-cv-12520, 2020 WL 563634 (D.N.J. Feb. 4, 2020)....................57–59

*Marek v. Chesny,*
  473 U.S. 1 (1985) ...........................................53, 54, 56–59

*Martinez-Serrano v. I.N.S.,*
  94 F.3d 1256 (9th Cir. 1996) .............................................30

*Memory Lane, Inc. v. Classmates, Inc.,*
  646 F. App'x 502 (9th Cir. 2016) ........................................25

*Mendocino Ry. v. Ainsworth,*
  113 F.4th 1181 (9th Cir. 2024)...........................................26

*Meredith v. Stovall,*
216 F.3d 1087 (10th Cir. 2000) ............................................................ 51

*Milkcrate Athletics, Inc. v. Adidas Am., Inc.,*
619 F. Supp. 3d 10098 (C.D. Cal. 2022 ........................................ 56, 61

*Mitcheson v. El Antro LLC,*
19-cv-01598, 2020 WL 7075239 (D. Ariz. Dec. 3, 2020)...................... 40

*Momox-Caselis v. Donohue,*
987 F.3d 835 (9th Cir. 2021) ...................................... 39, 42–44, 59, 69

*Moskowitz v. Am. Savings Bank, F.S.B.,*
37 F.4th 538 (9th Cir. 2022).................................. 22, 48, 49, 51–56, 60

*Munoz v. Imperial Cnty.,*
667 F.2d 811 (9th Cir. 1982) ............................................................... 43

*Nat'l Business Forms & Printing, Inc. v. Ford Motor Co.,*
671 F.3d 526 (5th Cir. 2012) ........................................................ 24, 25

*Newtok Vill. v. Patrick,*
21 F.4th 608 (9th Cir. 2021)................................................................ 62

*Nutrition Distribution LLC v. IronMag Labs, LLC,*
978 F.3d 1068 (9th Cir. 2020) ............................................................ 25

*O'Brien v. Westinghouse Electric Corp.,*
293 F.2d 1 (3d Cir. 1961)...................................................................... 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
572 U.S. 545 (2014) ...................................................................... 24, 25

*Perry v. Newsom,*
18 F.4th 622 (9th Cir. 2021)................................................................ 38

*Peter v. Nantkwest, Inc.,*
589 U.S. 23 (2019) ...................................................................... 53, 59

*Portillo v. Cunningham*,
  872 F.3d 728 (5th Cir. 2017) ............................................. 49, 50, 58, 59

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
  41 F.4th 1372 (Fed. Cir. 2022) ............................................. 32

*Reid v. I.C. Sys. Inc.*,
  304 F.R.D. 253 (D. Ariz. 2014) ............................................. 55

*Rimini St., Inc. v. Oracle USA, Inc.*,
  586 U.S. 334 (2019) ............................................. 59

*Roberts v. City of Honolulu*,
  938 F.3d 1020 (9th Cir. 2019) ............................................. 63

*Rogers v. Wal-Mart Stores, Inc.*,
  230 F.3d 868 (6th Cir. 2000) ............................................. 48

*San Diego Comic Convention v. Dan Farr Productions*,
  807 F. App'x 674 (9th Cir. 2020) ............................................. 43

*Sanderson v. Spectrum Labs, Inc.*,
  248 F.3d 1159 (7th Cir. 2000) ............................................. 51, 56

*Seneca Ins. Co. v. Strange Land, Inc.*,
  862 F.3d 835 (9th Cir. 2017) ............................................. 26

*Snapp v. United Transp. Union*,
  889 F.3d 1088 (9th Cir. 2018) ............................................. 37, 41

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
  839 F.3d 1179 (9th Cir. 2016) ......................... 23, 24, 26, 33–36, 62, 63

*T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*,
  806 F.3d 451 (9th Cir. 2015) ............................................. 23, 62

*Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*,
  294 F.3d 227 (1st Cir. 2002) ............................................. 44

ix

*ThermoLife Int'l LLC v. Aesthetic Distribution, LLC*,
19-cv-02048, 2020 WL 12581996
(D. Ariz. Jan. 7, 2020) ......................................... 3, 8–11, 13, 33, 36, 37

*ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*,
18-cv-04189, 2019 WL 3840988 (D. Ariz. Aug. 15, 2019) .... 6, 10, 12, 13

*ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*,
18-cv-04189, 2020 WL 122874 (D. Ariz. Jan. 10, 2020)............. 6, 13, 37

*ThermoLife Int'l, LLC v. Am. Fitness Wholesalers, L.L.C.*,
831 F. App'x 325 (9th Cir. Dec. 15, 2020). ............... 6, 10, 11, 16, 33–37

*ThermoLife Int'l LLC v. Better Body Sports LLC*,
No. 12-cv-09229, 2013 WL 12122226 (C.D. Cal. Oct. 8, 2013) ..........5, 7

*ThermoLife Int'l LLC v. BPI Sports LLC*,
18-cv-04663, 2019 WL 6135140 (D. Ariz. Nov. 19, 2019) .......... 7, 10, 12

*ThermoLife Int'l, LLC v. BPI Sports, LLC*,
21-15339, 2022 WL 612669
(9th Cir. Mar. 2, 2022)..................................7, 16, 34, 37, 38, 41, 42, 47

*ThermoLife Int'l LLC v. Compound Sols. Inc.*,
19-cv-01473, 2019 WL 5448804 (D. Ariz. July 30, 2019)...................7–9

*ThermoLife Int'l, LLC v. Compound Sols., Inc.*,
848 F. App'x 706 (9th Cir. Mar. 15, 2021) ................................... 7, 8, 10

*Thermolife Int'l LLC v. GNC Corp.*,
922 F.3d 1347 (Fed. Cir. 2019)................................................3–5, 8, 34

*ThermoLife Int'l LLC v. MusclePharm Corp.*,
19-cv-02440, 2020 WL 4016191
(D. Ariz. July 16, 2020) ................................................ 8–11, 14, 33, 37

*Thermolife Int'l, L.L.C. v. NeoGenis Labs, Inc.*,
18-cv-2980, 2019 WL 1438293, (D. Ariz. Apr. 1, 2019) ........................5

*ThermoLife Int'l, L.L.C. v. NeoGenis Labs, Inc.,*
411 F. Supp. 3d 486 (D. Ariz. Sept. 4, 2019)................................ 5, 6, 10

*ThermoLife Int'l LLC v. NetNutri.com LLC,*
18-cv-04248, 2019 WL 3220547 (D. Ariz. July 17, 2019)................ 6, 10

*ThermoLife Int'l, LLC v. NetNutri.com LLC,*
813 F. App'x 316 (9th Cir. July 23, 2020) ...................................... 6, 10

*ThermoLife Int'l LLC v. Sparta Nutrition LLC,*
19-cv-01715, 2020 WL 248164
(D. Ariz. Jan. 16, 2020) ................................................. 8, 10, 13, 34, 37

*TrafficSchool.com, Inc. v. Edriver Inc.,*
653 F.3d 820 (9th Cir. 2011) ............................................................. 39

*U.S. ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.,*
151 F.3d 1139 (9th Cir. 1998) ........................................................... 56

*U-Haul Int'l Inc. v. Jartran, Inc.,*
793 F.2d 1034 (9th Cir. 1986) ...................................................... 44, 45

*Uniloc USA, Inc. v. Blackboard, Inc.,*
17-cv-753, 2018 WL 46099573 (W.D. Tex. Sept. 24, 2018).................. 58

*Vivendi SA v. T-Mobile USA Inc.,*
586 F.3d 689 (9th Cir. 2009) ................................................... 26, 27, 39

*Wolf v. Pac. Nat'l Bank, N.A.,*
09-cv-21531, 2010 WL 1462298 (S.D. Fla. Mar. 18, 2010) .................. 58

## Statutes and Constitutions

U.S. Const., Art. III .............................................................. 37, 38, 41, 46

15 U.S.C. § 1117 ............................................................................... 1, 2

15 U.S.C. § 1117(a) ....... 1, 17–19, 21–25, 34, 43–45, 47, 50, 56–59, 62, 70

25 U.S.C. § 102 ...................................................................................... 3

25 U.S.C. § 103 ...................................................................................... 3

28 U.S.C. § 1291 .................................................................................... 1

28 U.S.C. § 1927 .................................................................................. 68

28 U.S.C. § 1331 .................................................................................... 1

28 U.S.C. § 1338 .................................................................................... 1

28 U.S.C. § 1367 .................................................................................... 1

29 U.S.C. § 216(b) ......................................................................... 48, 57

31 U.S.C. § 3730(d)(4) ........................................................................ 58

35 U.S.C. § 285 ........................................................................ 4, 34, 58

42 U.S.C. § 1988 .................................................................... 50, 54, 57

Fla. Stat. § 448.104 ............................................................................ 58

Fla. Stat. §§ 501.201, et seq. ............................................................. 66

N.J. Stat. Ann. § 2A:35-10(a) ............................................................ 58

## Court Rules

Fed. R. Civ. P. 12(b)(1) ...................................................................... 16

Fed. R. Civ. P. 12(b)(6) ...................................................................... 42

Fed. R. Civ. P. 41 ............................................................................... 56

Fed. R. Civ. P. 41(a)(1) ...................................................................... 55

Fed. R. Civ. P. 41(a)(2) ....................................................................55, 56

Fed. R. Civ. P. 41(d)...................................1, 17–19, 21–23, 47–60, 62, 71

Fed. R. Civ. P. 41(d)(1) ...........................................................................47

Fed. R. Civ. P. 54(d)(1) ...........................................................................53

Fed. R. Civ. P. 68(d)...........................................................................54, 57

## Other Authorities

Danielle Bolong, *Award of Attorney's Fees as Part of Costs Under Fed. R. Civ. P.41(d)(1) Where Dismissed Claims Are Refiled*, 75 A.L.R. FED. 3D 1 (2022). ................................................................48

Roger Allan Ford, *Patent Invalidity Versus Noninfringement*, 99 CORNELL L. REV. 71 (2013) ..................................................................4

Janet Freilich, *Patent Shopping*, 10 UC IRVINE L. REV. 619 (2020).........4

J. Thomas McCarthy, 4 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 27:30 (5th ed. Sept. 2024) ..........................................40

Gregory E. Upchurch, 2 IP LITIGATION GUIDE: PATENTS & TRADE SECRETS § 20:21 .......................................................................................4

## JURISDICTIONAL STATEMENT

The district court has subject-matter jurisdiction under 15 U.S.C. § 1117 and 28 U.S.C. §§ 1331, 1338, and 1367. The final judgment was entered on May 19, 2023. 1-ER-2. Appellants filed their notice of appeal on June 16, 2023. 2-ER-69–71. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Did the district court abuse its discretion by deeming this an "exceptional case" under the Lanham Act, 15 U.S.C. § 1117(a), and awarding BPI its attorneys' fees?

2. ThermoLife sued BPI, voluntarily dismissed it claims, then refiled the same claims against BPI in this action. Did the district court err by holding that Federal Rule of Civil Procedure 41(d) authorizes BPI to recover its attorneys' fees for defending the voluntarily dismissed action? And did the district court abuse its discretion by awarding those fees?

3. Is the $486,207 attorney-fee award reasonable in amount?

## STATEMENT OF ADDENDUM

All applicable statutes and rules are contained in the Addendum to this brief.

STATEMENT OF THE CASE

I.    Factual background.

A.    *ThermoLife litigates frequently to "police" the dietary-supplement market.*

ThermoLife, an Arizona company, styles itself a "world leader in the use and development of nitrate technology." 4-ER-896 ¶ 88. It owns and licenses various patents directed to combining nitrates and amino acids into raw ingredients for sports-related dietary supplements. 4-ER-879, 895–98. These ingredients are supposed to enhance human athletic performance. *Id*. ThermoLife is in the business of licensing its patents and selling its raw ingredients to companies that wholesale and retail finished dietary-supplements products. *Id*.

ThermoLife is also in the business of suing and threatening to sue companies that don't license its patents or buy its patented ingredients. It touts itself as "essentially hold[ing] a monopoly on the use of nitrate and amino acid compounds and compositions used in the sports nutrition market." 4-ER-877 ¶ 7. "With few exceptions," ThermoLife declares (inaccurately), "anytime an amino acid is combined with nitrate(s) and sold and marketed to consumers in a dietary supplement[,] the product relies on technology patented by ThermoLife." 4-ER-896 ¶ 91. It boasts that, to

protect its patents, it "aggressively polices the dietary supplement market." Appellants' Reply Br. (No. 21-15339), 2021 WL 4256490, at \*19 (Sept. 9, 2021). "As other courts have noted, ThermoLife is a frequent litigant in front of courts in this District [of Arizona] and other federal courts." *ThermoLife Int'l LLC v. Aesthetic Distribution, LLC*, 19-cv-02048, 2020 WL 12581996, at \*6 (D. Ariz. Jan. 7, 2020).

There's nothing wrong, of course, with filing a lawsuit—or even dozens of them—to protect legitimate commercial and intellectual-property rights, such as patents. But when ThermoLife pursues *baseless* lawsuits to extract settlements and to keep up its reputation as a gunslinger litigant, it deservedly risks having to pay attorneys' fees when it loses.

In 2013, for example, ThermoLife as patent licensee filed 81 patent-infringement lawsuits in the Southern District of California. *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1350–55 (Fed. Cir. 2019). Most of the claims were based on soon-to-expire patents, which ThermoLife licensed shortly before suing. *Id.* at 1350–55, 1362–63. It pursued these lawsuits against a host of dietary-supplement sellers. In a bench trial in 2016, all the asserted patent claims were invalidated under 25 U.S.C. §§ 102 and 103 as being respectively anticipated or obvious. *Id.* at 1350–55.

3

But this occurred only after ThermoLife's business of filing infringement actions had already yielded a wealth of nuisance-value settlements.[1]

For the handful of defendants that stuck it out, the district court awarded attorneys' fees against ThermoLife and its patent licensor. The Federal Circuit affirmed. It was an "exceptional case" under 35 U.S.C. § 285 because ThermoLife had "failed to conduct an adequate investigation into infringement before filing suit" against any of the defendants. *GNC*, 922 F.3d at 1362. ThermoLife had engaged in an unreasonable "'pattern of action' … of bringing 'suit against many defendants *without carefully reviewing* [*its*] *claims*.'" *Id.* at 1364. This "irresponsible filing of infringement allegations extended widely beyond the two cases" under review. *Id.*; *see* Gregory E. Upchurch, 2 IP LITIGATION GUIDE: PATENTS & TRADE SECRETS § 20:21 & n.39 (Apr. 2024) (citing *GNC* as "filed to obtain

---

[1] The high cost of defending patent-infringement lawsuits, even involving weak claims, can give patent holders and licensees considerable settlement leverage. *See* Roger Allan Ford, *Patent Invalidity Versus Noninfringement*, 99 CORNELL L. REV. 71, 112–14 (2013); Janet Freilich, *Patent Shopping*, 10 UC IRVINE L. REV. 619, 633–35, 659–67 (2020). This has generated a business of "bringing strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir. 2017).

settlements at a price far lower than the cost to defend the litigation without any intention of testing the merits of its claims"); *cf. also, e.g., ThermoLife Int'l LLC v. Better Body Sports LLC*, No. 12-cv-09229, 2013 WL 12122226 (C.D. Cal. Oct. 8, 2013) (granting summary judgment for defendants in 23 consolidated patent-infringement actions because claims were invalid, though choosing not to award fees).

B.   *ThermoLife filed eight, mostly baseless Lanham Act lawsuits in Arizona.*

From September 2018 through April 2019, ThermoLife filed eight lawsuits in the District of Arizona. Each alleged false-advertising claims under the Lanham Act plus other, related claims. The chart below identifies these cases and their outcomes.

| | Date Filed | Case | Outcome |
|---|---|---|---|
| 1. | 9/20/18 | *ThermoLife Int'l LLC v. Neogenis Labs, Inc.*, 18-cv-02980 (D. Ariz.). | • ThermoLife's claims against seller that licensed patents that competed with ThermoLife's patents dismissed without prejudice for lack of Lanham Act standing. *Thermolife Int'l, L.L.C. v. NeoGenis Labs, Inc.*, 18-cv-2980, 2019 WL 1438293, (D. Ariz. Apr. 1, 2019).<br>• Motion to dismiss ThermoLife's amended claims granted in part and denied in part. *ThermoLife Int'l,* |

|  | Date Filed | Case | Outcome |
|---|---|---|---|
|  |  |  | *L.L.C. v. NeoGenis Labs, Inc.*, 411 F. Supp. 3d 486 (D. Ariz. Sept. 4, 2019).<br>• On July 1, 2021, ThermoLife's motion to voluntarily dismiss its claims granted, with conditions. Dkt. 224. |
| 2. | 11/21/18 | *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, 18-cv-04189 (D. Ariz). | • ThermoLife's claims against seller dismissed without prejudice for lack of Lanham Act standing. *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, 18-cv-04189, 2019 WL 3840988 (D. Ariz. Aug. 15, 2019).<br>• ThermoLife's amended claims dismissed with prejudice for lack of Lanham Act standing, and attorneys' fees awarded against ThermoLife under Lanham Act. *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, 18-cv-04189, 2020 WL 122874 (D. Ariz. Jan. 10, 2020).<br>• Dismissal and fee award affirmed. *ThermoLife Int'l, LLC v. Am. Fitness Wholesalers, L.L.C.*, 831 F. App'x 325 (9th Cir. Dec. 15, 2020). |
| 3. | 11/28/18 | *ThermoLife Int'l LLC v. NetNutri.com LLC*, 18-cv-04248 (D. Ariz.) | • ThermoLife's claims against seller dismissed for lack of personal jurisdiction. *ThermoLife Int'l LLC v. NetNutri.com LLC*, 18-cv-04248, 2019 WL 3220547 (D. Ariz. July 17, 2019).<br>• Dismissal affirmed. *ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316 (9th Cir. July 23, 2020). |

| | Date Filed | Case | Outcome |
|---|---|---|---|
| 4. | 12/12/18 | *ThermoLife Int'l LLC v. BPI Sports, LLC*, 18-cv-04663 (D. Ariz.). | <ul><li>On Dec. 12, 2018, ThermoLife sued seller BPI in Arizona. 5-ER-1138–59.</li><li>On Nov. 19, 2019, ThermoLife's claims against BPI dismissed without prejudice for lack of Lanham Act standing. 5-ER-1161; *ThermoLife Int'l LLC v. BPI Sports LLC*, 18-cv-04663, 2019 WL 6135140 (D. Ariz. Nov. 19, 2019).</li><li>On Feb. 25, 2020, ThermoLife voluntarily dismissed its amended claims. 5-ER-1162.</li><li>On July 8, 2020, ThermoLife refiled same claims in Southern District of Florida, No. 20-cv-61373, adding Muscle Beach as plaintiff. 4-ER-875–917; 5-ER-1165.</li><li>On Oct. 25, 2020, case transferred to District of Arizona (No. 20-cv-02091). 4-ER-693–700; 5-ER-1164, 1167.</li><li>On Feb. 19, 2021, ThermoLife and Muscle Beach's claims dismissed with prejudice. 3-ER-509–21; 5-ER-1169.</li><li>Dismissal affirmed for lack of Lanham Act standing. *ThermoLife Int'l, LLC v. BPI Sports, LLC*, 21-15339, 2022 WL 612669 (9th Cir. Mar. 2, 2022).</li><li>On May 19, 2023, BPI awarded attorneys' fees. 1-ER-2–63.</li><li>On June 16, 2023, ThermoLife and Muscle Beach appeal. 2-ER-69.</li></ul> |
| 5. | 3/4/19 | *ThermoLife Int'l LLC v. Compound Sols. Inc.*, 19- | <ul><li>ThermoLife's claims against ingredient supplier dismissed without prejudice for lack of Lanham Act standing. *ThermoLife Int'l LLC v. Compound*</li></ul> |

| | Date Filed | Case | Outcome |
|---|---|---|---|
| | | cv-01473 (D. Ariz.). | *Sols. Inc.*, 19-cv-01473, 2019 WL 5448804 (D. Ariz. July 30, 2019). <br> • Dismissal reversed in part because ingredient supplier directly competed with ThermoLife. *ThermoLife Int'l, LLC v. Compound Sols., Inc.*, 848 F. App'x 706 (9th Cir. Mar. 15, 2021). <br> • On Sept. 21, 2021, case voluntarily dismissed due to settlement. Dkt. 66. |
| 6. | 3/13/19 | *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, 19-cv-01715 (D. Ariz.). | • ThermoLife's claims against seller dismissed without prejudice for lack of Lanham Act standing. *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, 19-cv-01715, 2020 WL 248164 (D. Ariz. Jan. 16, 2020). <br> • On Feb. 14, 2020, ThermoLife voluntarily dismissed claims. Dkt. 33–34. |
| 7. | 3/27/19 | *ThermoLife Int'l LLC v. Aesthetic Distribution*, LLC, 19-cv-02048 (D. Ariz.). | • ThermoLife's claims against seller dismissed without prejudice for lack of Lanham Act standing. *ThermoLife Int'l LLC v. Aesthetic Distribution, LLC*, 19-cv-02048, 2020 WL 12581996 (D. Ariz. Jan. 7, 2020). <br> • On Feb. 5, 2020, joint motion to stay denied. D. Ariz., 19-cv-02048, Dkt. 39. <br> • On Feb. 6, 2020, ThermoLife voluntarily dismissed claims. Dkt. 40–41. |
| 8. | 4/16/19 | *ThermoLife Int'l LLC v. Muscle-Pharm Corp.*, | • ThermoLife's claims against seller dismissed without prejudice for lack of Lanham Act standing. *ThermoLife Int'l LLC v. MusclePharm Corp.*, 19- |

|  | Date Filed | Case | Outcome |
|---|---|---|---|
|  |  | 19-cv-02440 (D. Ariz.). | cv-02440, 2020 WL 4016191 (D. Ariz. July 16, 2020).<br>• On Aug. 11, 2020, ThermoLife voluntarily dismissed claims. Dkt. 40–41. |

Seven of these lawsuits targeted wholesalers and retailers of sports-related dietary supplements that apparently did not buy their ingredients or license patents from ThermoLife. This included BPI, a Florida company. 4-ER-875–82. The eighth lawsuit targeted a raw-ingredient supplier, Compound Solutions, that competed directly with ThermoLife and supplied ingredients to at least two of the retailers ThermoLife sued. *Compound Sols.*, 2019 WL 5448804, at *1 (VASO6 ingredient); *Aesthetic Distribution*, 2020 WL 12581996, at *1–2 (same); *MusclePharm*, 2020 WL 4016191, at *1–2 (same).

Five of the lawsuits, including the one against BPI, involved mostly similar, and often identical, allegations and claims against wholesalers and retailers of finished dietary-supplement products: *American Fitness*, *BPI*, *Sparta*, *Aesthetic Distribution*, and *MusclePharm*. In each case, the district court dismissed ThermoLife's claims against the seller without prejudice. ThermoLife had failed to allege facts showing it fell within the

Lanham Act's zone of interests or that it had lost any sales at all, much less suffered commercial harm proximately caused by the sellers. *Am. Fitness*, 2019 WL 3840988, at *5–9; *BPI*, 2019 WL 6135140, at *2–3; *Sparta*, 2020 WL 248164, at *5–11; *Aesthetic Distribution*, 2020 WL 12581996, at *3–6; *MusclePharm*, 2020 WL 4016191, at *4–8.

As further explained below, in *American Fitness* the district court subsequently dismissed ThermoLife's amended claims with prejudice, a judgment which was affirmed on appeal. *Am. Fitness*, 2020 WL 122874, *aff'd*, 831 F. App'x 325; *infra*, 12–13, 15. ThermoLife voluntarily dismissed its other four, similar lawsuits against sellers of finished products (*Sparta*, *Aesthetic Distribution*, *BPI*, *MusclePharm*).

These five cases differ materially from ThermoLife's three other Arizona cases, which had different outcomes for different reasons. *Compound Sols.*, 848 F. App'x at 708–09 (reversing dismissal of Lanham Act claims because defendant was ingredient supplier that competed directly with ThermoLife); *NetNutri.com*, 2019 WL 3220547, at *2–4 (dismissing for lack of personal jurisdiction), *aff'd*, 813 F. App'x 316; *Neogenis*, 411 F. Supp. 3d at 494–502 (holding that, where retailer licensed patents that

10

competed directly with ThermoLife's patents, ThermoLife had parallel false-advertising and false patent-marking claims).[2]

## II.  Procedural history.

### A.  *ThermoLife sued BPI in Arizona, and BPI filed a different lawsuit against ThermoLife in Florida.*

On December 12, 2018, ThermoLife sued BPI in the District of Arizona (No. 18-cv-04663). 1-ER-42; 5-ER-1158–62; *supra*, 7. ThermoLife claimed false advertising under the Lanham Act, unfair competition, and civil conspiracy. 1-ER-42.

On February 26, 2019, BPI sued ThermoLife and its owner Ron Kramer in the Southern District of Florida (No. 19-cv-60505), bringing various unfair-competition claims. 1-ER-42; 6-ER-1256–95. BPI later added Muscle Beach as a defendant. 6-ER-1267. ThermoLife and Muscle Beach have persistently mischaracterized BPI's Florida lawsuit as nothing but a "retaliatory" action. Dkt. 29 at 11–15, 23; 1-ER-50–52; SER-67–68. They fail to mention that, after a five-day jury trial in October 2021, BPI obtained a verdict and judgment against them and Kramer for false

---

[2] False patent-marking claims were dismissed in *American Fitness*, 831 F. App'x at 326, *Aesthetic Distribution*, 2020 WL 12581996, at *5, and *MusclePharm*, 2020 WL 4016191, at *8. ThermoLife did not claim false patent-marking against BPI. 4-ER-914–16; 5-ER-1059–61, 1155–57.

11

advertising and unfair competition. 6-ER-1285–86; 3-ER-384–91. Because that case is on appeal in the Federal Circuit, BPI's motion in it for exceptional-case fees is on hold. 6-ER-1293–94.

> **B.** *After ThermoLife's multi-case litigation strategy in Arizona suffered setbacks, it voluntarily dismissed its Arizona lawsuit against BPI.*

On May 17, 2019, ThermoLife moved to transfer BPI's Florida action to Arizona, ThermoLife's home forum, where it had filed the eight lawsuits discussed above. 1-ER-42, 50; 6-ER-1236–55; *supra*, 5–11.

By fall 2019, however, ThermoLife's Arizona lawsuits against sellers of finished products were suffering setbacks. On August 15, 2019, the district court in *American Fitness* dismissed ThermoLife's Lanham Act claims without prejudice for lack of statutory standing. *Am. Fitness*, 2019 WL 3840988, at *5–9. On November 19, 2019, the district court dismissed ThermoLife's claims against BPI without prejudice for the same reason. *BPI*, 2019 WL 6135140, at *2–3. In both cases, ThermoLife filed amended complaints and continued litigating. *American Fitness*, 18-cv-04189, Dkt. 29 (Sept. 18, 2019); *BPI*, 5-ER-1005–61, 1161 (Dec. 19, 2019).

But further setbacks crippled ThermoLife's multi-case strategy for litigating in Arizona. 1-ER-42. On January 9, 2020, the Florida district

court denied ThermoLife's motion to transfer BPI's lawsuit against ThermoLife to Arizona because the two cases involving BPI "presented 'different legal and factual issues.'" 1-ER-42 (quoting 6-ER-1181); 6-ER-1263. Around the same time, two more district courts dismissed ThermoLife's claims in Arizona without prejudice for lack of Lanham Act standing. *Aesthetic Distribution*, 2020 WL 12581996, at *3–6 (Jan. 7, 2020); *Sparta*, 2020 WL 248164 at *5–11 (Jan. 16, 2020).

Even worse for ThermoLife, on January 10, 2020, the district court in *American Fitness* dismissed its amended claims for lack of statutory standing—this time, with prejudice. *Am. Fitness*, 2020 WL 122874, at *2– 6. The district court also imposed attorneys' fees; it was an "exceptional case" because ThermoLife's "statutory claims [we]re objectively groundless, and thus, frivolous." *Id*. at *7. On January 16, 2020, BPI moved to dismiss ThermoLife's amended claims against it in Arizona with prejudice. 5-ER-1162; 4-ER-921–39.

On February 5, 2020, ThermoLife appealed dismissal of its claims in *American Fitness* (18-cv-04189, Dkt. 41). The same day, the district court in the *Aesthetic Distribution* case denied a joint motion to stay that

case (19-cv-02048, Dkt. 39) pending the result of the appeal in *American Fitness*.

Its prospects having collapsed with this series of adverse rulings, ThermoLife abandoned its project of suing retailers in Arizona. On February 6, 2020, it voluntarily dismissed *Aesthetic Distribution* (19-cv-02048, Dkt. 40). On February 14, 2020, it voluntarily dismissed *Sparta* (19-cv-01715, Dkt. 33).[3]

"[S]earching for a way out" of its predicament in Arizona, 1-ER-49, on February 24, 2020, just before its response to BPI's motion to dismiss was due, ThermoLife now proposed an agreement to transfer its case against BPI to Florida. 1-ER-42, 49–50; 3-ER-502–05. ThermoLife's "pretext" was that this would supposedly help the parties "'avoid the potential for duplicative discovery.'" 1-ER-42 (quoting 3-ER-505); 1-ER-49–50. BPI rejected it. On February 25, 2020, ThermoLife voluntarily dismissed its Arizona case against BPI. 1-ER-42–43, 49; 4-ER-918; 5-ER-1162.

---

[3] On July 16, 2020, the district court dismissed the *MusclePharm* case without prejudice for lack of Lanham Act standing. 2020 WL 4016191, at *4–9. ThermoLife voluntarily dismissed it on August 11, 2020. 19-cv-02440, Dkt. 40.

C. *ThermoLife refiled its lawsuit against BPI in Florida, but it was transferred back to Arizona over ThermoLife and Muscle Beach's objection.*

Four months later, on July 8, 2020, "ThermoLife filed essentially the same claims against BPI in Florida—apparently hoping to fare better in that District." 1-ER-49 (No. 20-cv-61373); *see* 4-ER-774–859 (comparing complaints); 3-ER-510; 5-ER-1165. It joined Muscle Beach as a plaintiff. 3-ER-511; *see* 4-ER-675, 879, 911–12.

On August 13, 2020, BPI moved to transfer the refiled action back to Arizona. 1-ER-43; 4-ER-860–74; 5-ER-1166. In contrast to ThermoLife's earlier attempt to transfer BPI's Florida lawsuit to Arizona, Thermolife and Muscle Beach now opposed transfer of their Florida lawsuit back to Arizona. 1-ER-50–51; 4-ER-744–60. On October 25, 2020, the Florida district court transferred the refiled action to Arizona anyway, where it became this case (No. 20-cv-2091). 4-ER-693–700.

D. *The district court dismissed ThermoLife and Muscle Beach's claims against BPI with prejudice, and this Court affirmed.*

On November 12, 2020, BPI moved to dismiss ThermoLife and Muscle Beach's claims in this case with prejudice. 1-ER-43; 4-ER-672–92. They responded on December 28, 2020. 3-ER-599–618.

By then, this Court had affirmed the dismissal with prejudice of ThermoLife's similar claims in *American Fitness*, 831 F. App'x at 325–26 (Dec. 15, 2020). It affirmed that ThermoLife had "had no reasonable or legal basis to believe in success on the merits of its claims." *Id*. at 326. And it affirmed the district court's ruling that *American Fitness* was an exceptional case, which entitled the defendant to recover its attorneys' fees from ThermoLife. *Id*.

On February 19, 2021, the Arizona district court dismissed ThermoLife and Muscle Beach's claims in this case with prejudice. 3-ER-509–21. Although the district court did so under Rule 12(b)(1) for lack of Article III standing, it still explained how they lacked statutory standing under the Lanham Act. 3-ER-515–20.

On March 2, 2022, this Court affirmed based on lack of Lanham Act standing. "Both ThermoLife and Muscle Beach failed to plead sufficient facts to satisfy the proximate-cause requirement necessary to plead a cause of action under the Lanham Act." *BPI*, 2022 WL 612669, at *2. Allegations of harm by ingredient-supplier ThermoLife, which "operates at a different level of the supply chain than" finished-product retailer BPI, were "speculative at best." *Id*. at *2. Muscle Beach, which allegedly

16

retailed dietary supplements competing with BPI's, fared no better. Its products were "entirely different" from BPI's, and "Muscle Beach failed to allege any facts that show consumers consider its products to be substitutes with BPI's products." *Id.* at *3. For the same reasons, all their other claims failed too. *Id.*

## III. Rulings presented for review.

> *A. The district court held that BPI is entitled to recover its attorneys' fees under the Lanham Act and Federal Rule of Civil Procedure Rule 41(d).*

As the prevailing party, BPI moved to recover its attorneys' fees from ThermoLife and Muscle Beach. 1-ER-2, 41; 5-ER-1169–70; SER-84–101; *see* SER-46–83. BPI's motion in this Court for appellate fees was transferred to the district court. 1-ER-66.

On September 30, 2022, the district court held that BPI is entitled to recover its fees from ThermoLife and Muscle Beach. 1-ER-41–63. This includes BPI's fees incurred both in defending the prior action in Arizona, which ThermoLife had voluntarily dismissed, and in obtaining dismissal with prejudice of this action plus affirmance on appeal. 1-ER-62. The award had two grounds: (1) the Lanham Act; and (2) Rule 41(d).

1. <u>The district court awarded fees for this action under 15 U.S.C. § 1117(a) because this was an "exceptional case."</u>

The district court deemed this case is "exceptional" under the Lanham Act's fee-shifting provision: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). 1-ER-44–58. First, the district court found that "the chronology of events in this case—and in the related litigations—shows strategic maneuvering by [ThermoLife and Muscle Beach] that strongly suggests forum shopping." 1-ER-46. Second, the district court found that they "chose to pursue this litigation in two Districts and on appeal to the Ninth Circuit despite knowing that their claims were meritless …." 1-ER-52. Third, the district court found that this case was part of a "vexatious and harassing" pattern of litigation in Arizona, which expanded legal proceedings "needlessly" and caused BPI to "waste time and expense." 1-ER-57. The district court awarded fees under 15 U.S.C. § 1117(a) to compensate BPI and to deter ThermoLife and Muscle Beach from future similar misconduct. 1-ER-57.

2. <u>The district court awarded fees for the previous action under Rule 41(d) because it was "exceptional" and litigated in bad faith.</u>

In addition to awarding BPI its attorneys' fees incurred in defending this action (S.D. Fla. No. 20-cv-61373 / D. Ariz. No. 20-cv-2091), the district court awarded BPI its fees for defending the previous action that Thermolife had voluntarily dismissed (D. Ariz. No. 18-cv-4663). It did so under Rule 41(d), which provides for a discretionary award of "costs" when a nonsuiting plaintiff refiles the same claims against the same defendant.

Acknowledging uncertainty over whether Rule 41(d)'s use of the word "costs" permits an award of attorneys' fees, the district court held it does in two scenarios: (1) when an underlying statute provides for attorneys' fees; or (2) when the prior, voluntarily dismissed action was litigated in bad faith. 1-ER-58–61. The district court exercised its discretion to award attorneys' fees on both grounds. The previous action was "exceptional" under 15 U.S.C. § 1117(a). 1-ER-59–60. And ThermoLife had litigated it (and the entire litigation) in "bad faith." 1-ER-59–60, 62.

19

B. *The district court awarded BPI $454,339 in reasonable attorneys' fees.*

The parties subsequently litigated the amount to be awarded. 1-ER-64–65; SER-2–45. BPI sought $530,332 for 805 hours of work. On May 19, 2023, applying the lodestar method, the district court awarded $486,207. 1-ER-2–40.

## SUMMARY OF ARGUMENT

In 2018 and 2019, ThermoLife, a supplier of patented raw ingredients for sports-related dietary supplements, filed eight Lanham Act false-advertising lawsuits in Arizona. An old-hand, gunslinger litigant, ThermoLife filed seven lawsuits against wholesalers and retailers of finished dietary-supplement products. It also sued one ingredient supplier, which competed with ThermoLife and supplied raw ingredients to some of the sellers of finished products. Five similar cases against finished-product sellers, including BPI, were dismissed. In those cases, the district courts found that ThermoLife, as an ingredient supplier, occupied a different level in the market and was incapable of alleging that the finished-product sellers had caused it any commercial harm. ThermoLife thus lacked

20

standing under the Lanham Act. Two of those dismissals were affirmed on appeal. Thermolife abandoned the remaining similar cases.[4]

After it suffered repeated, crippling setbacks in Arizona, ThermoLife voluntarily dismissed its claims against BPI. It refiled them in Florida, where BPI was successfully pursuing its own lawsuit against ThermoLife on different issues (BPI obtained a jury verdict). To bolster its claims against BPI, ThermoLife added "retailer" Muscle Beach as a plaintiff, although it couldn't allege that BPI had caused it any commercial harm either. ThermoLife and Muscle Beach resisted, unsuccessfully, the lawsuit's transfer back to Arizona, where it became this case. The district court dismissed their claims with prejudice. This Court affirmed.

As the prevailing party, BPI moved for its attorneys' fees under 15 U.S.C. § 1117(a) and Federal Rule of Civil Procedure 41(d). The district court found that ThermoLife and Muscle Beach had impermissibly forum-shopped, had pursued claims against BPI in two district courts and

---

[4] The three remaining lawsuits differ materially: one case involved claims against the ingredient supplier that competed directly with ThermoLife; one case involved false patent-marking claims against a retailer that licensed ingredient-related patents that competed directly with ThermoLife's ingredient-related patents; and one case was dismissed for lack of personal jurisdiction.

on appeal despite knowing they were meritless, and had done this in connection with larger program of pursuing baseless lawsuits. Exercising its equitable discretion, the district court deemed this whole case, including the voluntarily dismissed precursor and the prior appeal, to be "exceptional" under 15 U.S.C. § 1117(a). It found that, throughout, ThermoLife and Muscle Beach had litigated unreasonably, vexatiously, and in bad faith. The district court awarded BPI over $450,000 in fees. Because the district court did not abuse its discretion, this Court should affirm.

In awarding BPI its attorneys' fees for defending the previous action, which ThermoLife voluntarily dismissed then refiled, the district court relied on Rule 41(d). This rule says that, if a plaintiff voluntarily dismisses its claims then refiles them against the same defendant, the court in the new action "may order the plaintiff to pay all or part of the costs of that previous action." Fed. R. Civ. P. 41(d).

In *Moskowitz v. American Savings Bank, F.S.B.*, 37 F.4th 538 (9th Cir. 2022), this Court held that Rule 41(d)'s use of the word "costs" doesn't give defendants a "right" to recover attorneys' fees. But the Court reserved for another case the questions whether fees are available under Rule 41(d) when there is, as here, an underlying fee-shifting statute or

the voluntarily dismissed action was litigated in bad faith. Other Circuits are divided on these questions. This Court should affirm, holding that attorneys' fees are properly awardable under Rule 41(d) on both grounds.

## ARGUMENT

### I.   The district court reasonably deemed this case exceptional and awarded BPI attorneys' fees under 15 U.S.C. § 1117(a).

The district court concluded that this entire "case," including the previous action, is "exceptional" under the Lanham Act's fee-shifting provision. 1-ER-45–58. This decision is reviewed for abuse of discretion. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016) (en banc). The district court's underlying factual findings are reviewed for clear error. *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 474 (9th Cir. 2015). The Court should affirm.

### A.   *The Lanham Act gives courts discretion to award attorneys' fees in "exceptional cases."*

Under the Lanham Act, the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). ThermoLife and Muscle Beach don't contest that BPI prevailed. Nor could they. All claims against BPI were dismissed with prejudice, and the judgment was affirmed. 1-ER-43. The question is whether this case is exceptional.

An "exceptional case" is "'simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *SunEarth*, 839 F.3d at 1180 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014)). To judge whether a case is exceptional, a district court must "examine the 'totality of the circumstances' …, exercising equitable discretion in light of … nonexclusive factors … and using a preponderance of the evidence standard." *Id.* at 1181 (citations omitted). Factors include "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (citation omitted).

ThermoLife and Muscle Beach mischaracterize the exceptional-case standard as higher than it really is. Dkt. 29 at 26–27.

First, both the "narrow" construction of exceptionality in *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 991 (9th Cir. 2008), and the "bad faith" standard applied in *National Business Forms & Printing, Inc. v.*

*Ford Motor Co.*, 671 F.3d 526, 537 (5th Cir. 2012), have been abrogated by *Octane*, 572 U.S. at 555–57.

Second, they depict *Memory Lane, Inc. v. Classmates, Inc.*, 646 F. App'x 502, 504 (9th Cir. 2016), as holding that, for a defendant to recover fees under the Lanham Act, the plaintiff's claims must be found "exceptionally weak." Not so. *Memory Lane* was referencing, in the context of reviewing the denial of fees, the "weakness" of a trademark under an eight-factor test for determining likelihood of confusion. *Id.* at 504 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)).

Third, they mistake *Nutrition Distribution LLC v. IronMag Labs, LLC*, 978 F.3d 1068 (9th Cir. 2020), as affirming the denial of "exceptional case" fees *against* a plaintiff that had filed 80 Lanham Act lawsuits. In *Nutrition Distribution*, it was the *plaintiff* that prevailed and sought fees under the Lanham Act (just unsuccessfully).

B.    *The district court reasonably found this entire litigation to be "exceptional."*

There's ample support for the district court's determination that this entire litigation is "exceptional" under 15 U.S.C. § 1117(a).

25

1. <u>The district court reasonably found that ThermoLife and Muscle Beach had engaged in impermissible forum-shopping.</u>

The district court didn't abuse its discretion by finding that ThermoLife and Muscle Beach had engaged in impermissible forum-shopping. 1-ER-45–46; *SunEarth*, 839 F.3d at 1181 (considering motivation).

Although a plaintiff is "the 'master of [its] complaint' and is free to choose the forum for [an] action, this principle is not without limitation." *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769 (9th Cir. 1986). Maneuvering for a forum becomes vexatious gamesmanship when, as here, a party has "improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 846 (9th Cir. 2017); 1-ER-46. "[A]ny indication that a party 'sought to manipulate the litigation or behaved vexatiously to wind up in the forum of its choosing' supports a finding of forum shopping." *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1190 (9th Cir. 2024) (citation omitted).

Finding "that a party is forum shopping turns on issues of that party's intent" at the time of its conduct. *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009); 1-ER-47 n.3. "[I]t is a finding of

fact to which [this Court] owe[s] deference unless the trial court abused its discretion in making such a determination." *Vivendi*, 586 F.3d at 695.

First, the district court found "that the chronology of events in this case … shows strategic maneuvering by [ThermoLife and Muscle Beach] that strongly suggests forum shopping." 1-ER-46. Beginning with its initial complaint against BPI, filed on December 12, 2018 (No. 18-cv-04663), ThermoLife "vigorously pursued its claims against BPI in Arizona," its home forum, "for over a year." 1-ER-46. During that time, it tried to transfer BPI's Florida lawsuit against ThermoLife, Muscle Beach, and Kramer (No. 19-cv-60505) to Arizona. *Id.*

But by the end of January 2020, ThermoLife "suffered several setbacks that appear to have changed [its] mind about continuing the litigation in Arizona." 1-ER-46. BPI's own (ultimately successful) lawsuit against ThermoLife, Muscle Beach, and Kramer in Florida remained there when, on January 9, 2020, the Florida district court denied the motion to transfer it to Arizona. 1-ER-42, 50; 6-ER-1181, 1263. By mid-January 2020, district courts had dismissed two other, similar lawsuits filed by ThermoLife in Arizona because it lacked standing under the Lanham Act. 1-ER-46–48. BPI had moved on the same ground to dismiss the

refiled complaint in this action with prejudice. 4-ER-672–92. And during this time, the dismissal of ThermoLife's claims even against the ingredient supplier in *Compound Solutions* had not yet been partially reinstated on appeal. 1-ER-47 n.3.

The district court found that, by February 2020, ThermoLife was thus "[f]aced with the imminent possibility—or even likelihood—of dismissal with prejudice," and so it "began searching for a way out" of Arizona, which it no longer viewed as a favorable forum (despite being its home). 1-ER-49. The "way out" was to voluntarily dismiss its claims against BPI in Arizona and to refile them in Florida, where ThermoLife "apparently hop[ed] to fare better." *Id.*; *supra*, 12–15.

On February 24, 2020, ThermoLife asked BPI to agree to transfer ThermoLife's Arizona action against it to Florida; BPI refused. 1-ER-42, 49–50. The district court found that ThermoLife's purported reason—to "'avoid the potential for duplicative discovery'" through consolidated efforts, 1-ER-42 (quoting 3-ER-505); *see* SER-73—was a "mere pretext" for its desire to "flee to Florida in hopes of a more favorable forum and outcome." 1-ER-50. In this appeal, ThermoLife and Muscle Beach continue to "distort[ ] the procedural history," 1-ER-50, by pretending that

28

ThermoLife had always "inten[ded] to litigate in one court for efficiency reasons," Dkt. 29 at 17, and "to avoid duplication and inconsistent decision-making," *id*. at 12; *see id*. at 13, 46–50, 55, 69.

On February 25, 2020, four days before its deadline for responding to BPI's motion to dismiss with prejudice, ThermoLife voluntarily dismissed its Arizona action against BPI. 1-ER-42–43, 49. The district court found this was motivated by ThermoLife's intent to evade unfavorable rulings in Arizona. 1-ER-49–52.

On July 8, 2020, "ThermoLife filed essentially the same claims against BPI in Florida—apparently hoping to fare better in that District." 1-ER-49 (No. 20-cv-61373). ThermoLife dressed up its claims by adding a whopping "sixty paragraphs of new allegations," Dkt. 29 at 13, that made no substantive difference. It also "joined Muscle Beach," an alter ego of ThermoLife, as a plaintiff "seemingly to cure the defects of the original case," 3-ER-511, even though it too was incapable of alleging it suffered any commercial harm, 1-ER-56; *supra*, 14–16.

On August 13, 2020, BPI moved (successfully) to transfer ThermoLife and Muscle Beach's action refiled in Florida back to Arizona (where it became case No. 20-cv-02091). 1-ER-43. In a striking about-face

from earlier efforts to keep ThermoLife's lawsuit against BPI in Arizona, ThermoLife and Muscle Beach now opposed transfer to Arizona. 1-ER-49–51. They professed that "ThermoLife [had] always intended to file its claims against BPI in this District" of Florida. 4-ER-750. And they later declared that, by nonsuiting in Arizona and refiling in Florida, they were merely trying to "consolidate" their action against BPI with its action against them. SER-73; *supra*, 14–15.

The district court rejected these pretenses as "hollow" and as "repeatedly distort[ing] the procedural history." 1-ER-50. "[T]here is no evidence," it found, "that ThermoLife had any intention of consolidating the actions in Florida." 1-ER-52. Instead, "the record indicates that ThermoLife's consolidation explanation is mere pretext for the actual reason it dismissed its claims and refiled them in Florida: to avoid seemingly imminent dismissal with prejudice in Arizona and to flee to Florida in hopes of a more favorable forum and outcome." 1-ER-50. This stirred up "serious concerns" that "ThermoLife [had] engaged in blatant and impermissible forum shopping and thereby litigated this case in an unreasonable manner." 1-ER-52; *accord* 1-ER-46. These and related findings amply show forum-shopping by a preponderance of the evidence. 1-ER-46.

30

On appeal, ThermoLife and Muscle Beach don't raise any issue of clear error concerning the district court's factfinding. *See* Dkt. 29 at 1–2. Issues not raised in an opening brief are forfeited. *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996). Instead, ThermoLife and Muscle Beach skew the facts.

Despite acknowledging that "the present appeal is not about relitigating the first appeal," Dkt. 29 at 40, they rehash in detail the allegations of their long-dismissed complaint. *See id.*, 2–9, 13–16; 4-ER-875–917. But the operative facts for *this* appeal are, instead, the detailed findings that the district court made in its orders awarding attorneys' fees. 1-ER-2–63. These facts include the complaint's allegations. But they also include the entire procedural history and, even more broadly, ThermoLife's litigation history in Arizona and Florida—all of which the district court properly considered.

ThermoLife and Muscle Beach argue that, in finding forum-shopping, the district court supposedly contradicts itself. On the one hand, the district court here credited the Florida district court's conclusion that BPI's Florida action and this action are "factually and legally distinct." 1-ER-42 (referencing 6-ER-1181). On the other hand, the district court

accepted BPI's hiring of Hillyer, BPI's lead counsel in its Florida lawsuit, in this case to help ensure that BPI's positions in the two lawsuits had "uniformity." 1-ER-11; *see* Dkt. 29 at 47–48. But this is dichotomy is fake. Coordination among counsel for a single client involved in multiple lawsuits is routine, even when the lawsuits aren't all the same.

ThermoLife and Muscle Beach otherwise just replay the same factually unsupported spiel—BPI's lawsuit was "retaliatory" and they really just wanted to "consolidate" things in Florida—that the district court has already reasonably rejected as pretextual. 1-ER-50–51; *see* Dkt. 29 at 11, 15, 17, 23, 46–50, 54–56.[5]

The Court should affirm the finding of blatant, impermissible forum-shopping. *See Realtime Adaptive Streaming LLC v. Netflix, Inc.*, 41 F.4th 1372 (Fed. Cir. 2022) (affirming forum-shopping determination based on similar procedural history).

---

[5] Kramer's declaration, 1-ER-763–64, is irrelevant. Dkt. 29 at 49.

2.   The district court reasonably found that ThermoLife's case against BPI was part of a broader pattern of unreasonable litigation conduct.

The district court reasonably found that ThermoLife, with Muscle Beach's cooperation, engaged in an unreasonable pattern of litigation. 1-ER-55–58; *SunEarth*, 839 F.3d at 1180 (considering total circumstances).

When ThermoLife first sued BPI, it was one shot in a barrage of lawsuits in Arizona against specifically targeted sellers of finished dietary-supplement products and one ingredient supplier (Compound Solutions), which supplied some of the sellers. *Supra*, 5–11. In five of these cases—*American Fitness*, *Sparta*, *Aesthetic Distribution*, *MusclePharm*, and *BPI*—ThermoLife claimed it was harmed by the sellers even though they sold only finished dietary-supplement products, while ThermoLife supplied only patented raw ingredients. They thus occupied "different levels of the supply chain." 1-ER-53.

ThermoLife and Muscle Beach's attempt to distinguish these cases is superficial. Dkt. 29 at 41–44. In none of the cases was ThermoLife capable of alleging any *facts* showing that it, or any company that used its ingredients, had lost even a single sale due to the defendants' alleged false advertising. 1-ER-48–49, 53–56; *see Am. Fitness*, 831 F. App'x at

325–36; *BPI*, 2022 WL 612669, at \*2–3; *Sparta*, 2020 WL 248164, at \*7–10; *Aesthetic Distribution*, 2020 WL 12581996, at \*3–6; *MusclePharm*, 2020 WL 4016191, at \*4–8.

The district court correctly observed that this case "was not the first time [ThermoLife and Muscle Beach] have pursued similar claims against similar defendants despite lacking *any* evidence of direct competition or commercial or competitive injury." 1-ER-57 (emphasis added). Dismissal in this case was "merely the latest in a series of decisions in this District—all occurring during the course of ThermoLife's litigation with BPI—dismissing unfair competition and false advertising claims brought by ThermoLife against other defendants for the exact same reason." 1-ER-55; *see* 1-ER-56; *supra*, 5–11. ThermoLife thus displayed a "pattern" of suing many defendants without having any legitimate factual basis. *Cf. GNC*, 922 F.3d at 1364 (applying 35 U.S.C. § 285); *SunEarth*, 839 F.3d at 1180 (35 U.S.C. § 285's exceptionality standard is "parallel and identical" to 15 U.S.C. § 1117(a)).

The district court reasonably deemed this entire litigation "exceptional" because ThermoLife, with Muscle Beach's help, engaged in a "vexatious and harassing pursuit of claims that it ha[d] repeatedly filed

against the same types of defendants only to see those claims repeatedly dismissed for having the same deficiencies." 1-ER-57. This finding is directly supported by this Court's determination in *American Fitness* that "ThermoLife proceeded unreasonably in the litigation" because it had "*no reasonable or legal basis* to believe in success on the merits of its claims." *Am. Fitness*, 831 F. App'x at 326 (emphasis added).

> 3. The district court reasonably found that ThermoLife and Muscle Beach's Lanham Act claims were objectively unreasonable.

The district court reasonably found that that ThermoLife and Muscle Beach intentionally pursued Lanham Act false-advertising claims against BPI were frivolous. 1-ER-46, 52–55; *SunEarth*, 839 F.3d at 1181.

ThermoLife and Muscle Beach "repeatedly asserted their claims against BPI despite having *no facts* to support a competitive or commercial injury caused by BPI's conduct." 1-ER-53 (emphasis added). They persisted in "pursu[ing] their claims against [BPI] despite *lacking any factual allegations* to show that the parties were in direct competition or that [BPI] otherwise competitively or commercially injured them." 1-ER-57 (emphasis added). They "pursued such meritless claims for over two years in two Districts and on appeal to the Ninth Circuit." 1-ER-57. And

35

they did so willfully and in bad faith. They "were well aware that their claims were meritless without alleging [any commercial injury] injury and [they] therefore cannot argue that they had any reasonable or legal basis to believe that their claims would succeed." 1-ER-53.

4.   <u>The district court reasonably found that awarding fees promotes considerations of compensation and deterrence.</u>

The district court found that ThermoLife and Muscle Beach's impermissible forum-shopping and years-long pursuit of claims against BPI dragged this litigation out "needlessly" and caused BPI to "waste time and expense." 1-ER-57. It thus reasonably determined that deeming this case exceptional will advance "considerations of compensation as well as deter[rence]." *Id.*; *see SunEarth*, 839 F.3d at 1181.

5.   <u>ThermoLife and Muscle Beach's arguments against the exceptional-case finding lack merit.</u>

ThermoLife and Muscle Beach cannot show that the district court abused its discretion by deeming this case exceptional.

First, they cannot genuinely distinguish their claims against BPI from ThermoLife's failed claims against sellers of finished products in the other lawsuits.

They say *American Fitness* is inapposite because it involved different products. Dkt. 29 at 41. But *American Fitness* is analogous because there, as here, ThermoLife sued a retailer without any facts showing the retailer had caused ThermoLife any commercial harm. *Am. Fitness*, 831 F. App'x at 325–36; *Am. Fitness*, 2020 WL 122874, at *1, 3. They say *American Fitness* is inapposite because it didn't include Muscle Beach as a plaintiff. But this Court has already held that Muscle Beach too was incapable of alleging any commercial harm—a holding that's now law of the case. *BPI*, 2022 WL 612669, at *3; *see Snapp v. United Transp. Union*, 889 F.3d 1088, 1096 (9th Cir. 2018).

ThermoLife and Muscle Beach's attempts to distinguish *Sparta*, *Aesthetic Distribution*, and *MusclePharm* fail for the same reasons. Dkt. 29 at 42–43. In each case, the district court rejected false-advertising allegations that, although concerning different products, lacked any genuine factual basis. *Sparta*, 2020 WL 248164, at *7–10; *Aesthetic Distribution*, 2020 WL 12581996, at *3–6; *MusclePharm*, 2020 WL 4016191, at *3–8.

The different ruling that there was Article III standing in *MusclePharm*, as this Court also held in the prior appeal, *BPI*, 2022 WL 612669,

at *1, is irrelevant. "Article III standing is an essential ingredient of subject matter jurisdiction" in federal court, *Perry v. Newsom*, 18 F.4th 622, 630 (9th Cir. 2021). But it's no cause of action. "In order for [ThermoLife and Muscle Beach] to succeed in federal court, they must satisfy both Article III standing *and* the elements of the cause of action they attempt to assert." *BPI*, 2022 WL 612669, at *1 (emphasis added). In *American Fitness*, *Sparta*, *Aesthetic Distribution*, *MusclePharm*, and *BPI*, ThermoLife lacked any reasonable basis for alleging Lanham Act standing.

*Compound Solutions* is inapposite because ThermoLife sued an *ingredient supplier* that occupied the same position in the dietary-supplement market as ThermoLife—a crucial distinction, which ThermoLife and Muscle Beach obscure. Dkt. 29 at 10–11, 34, 43. ThermoLife litigated against BPI for over two years by the time *Compound Solutions* was partially reversed on a distinguishable basis. 1-ER-47 n.3.

Second, ThermoLife and Muscle Beach now argue—for the first time—that suing BPI was reasonable because the relevant law on Lanham Act standing is supposedly unsettled. Dkt. 29 at 8, 27–32. They didn't make this argument below. 1-ER-44–58; SER-15–34, 59–83. This Court ordinarily "do[es] not consider arguments raised for the first time

on appeal." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841–42 (9th Cir. 2021). The Court shouldn't consider this new position, especially because it's "inconsistent" with their position taken below. *Id.* To hold otherwise "could encourage [ThermoLife] to 'sandbag' at the district court level, only then to play [its] 'ace in the hole' before the appellate court." *Campbell v. Davol, Inc.*, 620 F.3d 887, 892 (8th Cir. 2010) (citation omitted).

Regardless, their new argument makes no difference. The exceptional-case inquiry examines ThermoLife and Muscle Beach's motives at the time of their conduct. *Vivendi*, 586 F.3d at 695. The record shows that they did not in fact litigate this case believing that the law on Lanham Act standing is unsettled. They primarily argued below and in the prior appeal that they had standing because they competed directly with BPI and so were entitled to a presumption of commercial harm under *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826–27 (9th Cir. 2011). *See* Resp. to Mot. to Dismiss (No. 20-cv-02091) (Apr. 15, 2019), 3-ER-600, 607–16 (arguing complaint plainly alleges direct competition); Opening Br., No. 21-15339, 2021 WL 2274055, at *1–3, 5, 7–13, 18–19, 22–27, 33–35 (May 26, 2021) (similar); Reply Br., No. 21-15339, 2021 WL 4256490, at *6–11 (Sept. 9, 2021) (similar); SER-75–80.

They also previously argued, contrary to their new position, that ThermoLife had Lanham Act standing because *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), had *clarified* that standing can arise from indirect commercial harm. *See* Resp. to Mot. to Dismiss (No. 18-cv-04663) (Dec. 28, 2020), 5-ER-1101 (In *Lexmark*, "the United States Supreme Court clarified the requirements for standing ...."); Resp. to Mot. to Dismiss (No. 20-cv-02091) (Apr. 15, 2019), 3-ER-611 (similar); Opening Br., No. 21-15339, 2021 WL 2274055, at *27, 29–32 (May 26, 2021) (similar); Reply Br., No. 21-15339, 2021 WL 4256490, at *12–13 (Sept. 9, 2021) (similar); *see also* J. Thomas McCarthy, 4 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 27:30 (5th ed. Sept. 2024) (explaining how Lexmark recognized indirect competition as a basis for standing); *see Lexmark*, 572 U.S. at 138.

Thus, even if the law surrounding *Lexmark* were unsettled, ThermoLife and Muscle Beach could not show that such "legal uncertainty" in fact motivated their litigation. It didn't.

In any event, to the extent "tension" over requirements for standing remains or has arisen since *Lexmark*, Dkt. 29 at 9–11, 27–29, it isn't genuinely at issue in this case. ThermoLife and Muscle Beach interpose an

inapposite debate when they question whether, after *Lexmark*, commercial harm must still have a "competitive" component as required by *Jack Russell Terrier Network of Northern California v. American Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005). Dkt. 29 at 9–10, 29. They were unable to allege *any* commercial harm *at all*, much less competitive harm. *BPI*, 2022 WL 612669, at *3; 1-ER-43; 3-ER-516–18; 3-ER-589–97; 4-ER-682–89; BPI Answering Br., No. 21-15339, 2021 WL 3264382, at *25–38 (July 26, 2021). They also overlook the fact that the district court cases they rely on were able to reconcile *Jack Russell* with *Lexmark*. *See Mitcheson v. El Antro LLC*, 19-cv-01598, 2020 WL 7075239, at *15–16 (D. Ariz. Dec. 3, 2020), and *Geiger v. Creative Impact Inc.*, 18-cv-01443, 2020 WL 3545560, at *13–14 (D. Ariz. June 30, 2020).

Third, ThermoLife and Muscle Beach try to blame BPI for their own litigation misconduct. They suggest that BPI somehow expanded the litigation by conflating Lanham Act standing with Article III standing and making other "unclear" or inaccurate arguments. Dkt. 29 at 44–45. But even if this were true, it would be beside the point. ThermoLife and Muscle Beach were plaintiffs. They persisted in filing and refiling superficially complex yet meritless complaints, to which BPI had to respond.

Fourth, contrary to the law of the case, *Snapp*, 889 F.3d at 1096, ThermoLife and Muscle Beach try to justify their conduct by improperly relitigating the merits of their prior, failed appeal (No. 21-15339). They improperly ask the Court to still take as true the allegations in their complaint. Dkt. 29 at 2 n.1. This was required in their prior appeal under Rule 12(b)(6). *BPI*, 2022 WL 612669, at *1. But it's neither required nor appropriate here. The operative facts in *this* appeal are the district court's findings in its orders awarding attorneys' fees. 1-ER-2–63.

They reargue their contention, already rejected by this Court, that Muscle Beach was "plainly a direct competitor (on the same distribution level) with BPI." Dkt. 29 at 22, 31–33, 39. And they reargue that ThermoLife had Lanham Act standing. *Id.*, 34–39; *see BPI*, 2022 WL 612669, at *2–3. This includes making the strange argument, improperly raised for the first time on appeal, *Momox-Caselis*, 987 F.3d at 841, that ThermoLife had standing insofar as Muscle Beach had standing because Muscle Beach was merely its alter ego. Dkt. 29 at 38–39. This just suggests

42

that Muscle Beach was added as a sham—an inference that weighs in favor of finding this case exceptional.[6]

They also try to fault this Court for not addressing, in the prior appeal, whether their request for injunctive relief affected their standing. Dkt. 29 at 19, 22, 39–40. But they never raised this issue in their prior appeal or in litigating over attorneys' fees. Opening Br., No. 21-15339, 2021 WL 22744055; 3-ER-599–618; SER-15–34. This Court "need not and do[es] not consider a new contention that could have been but was not raised on the prior appeal," *Munoz v. Imperial Cnty.*, 667 F.2d 811, 817 (9th Cir. 1982), or below, *Momox-Caselis*, 987 F.3d at 841. And the "persistent desire to re-litigate issues already decided" itself supports an exceptional-case determination. *San Diego Comic Convention v. Dan Farr Productions*, 807 F. App'x 674, 676 (9th Cir. 2020).

Fifth, they imply that the district court abused its discretion in finding this case exceptional because the sheer volume of their "detailed" factual allegations in their refiled complaint displayed "good-faith efforts to

---

[6] The Florida district court sanctioned ThermoLife, Muscle Beach, and Kramer for fabricating a patent-license agreement between ThermoLife and Muscle Beach. *See* 6-ER-1277–79 (Dkt. 226 & Dkt. 252).

adequately allege proximate cause." Dkt. 29 at 34–38. This purely con-clusory argument is belied by the procedural history. *Supra*, 5–16.

6.   BPI is entitled to recover its fees for the prior appeal.

ThermoLife and Muscle Beach argue that the district court abused its discretion by awarding appellate fees for the prior appeal because the prior appeal itself was not "exceptional" under 15 U.S.C. § 1117(a). Dkt. 29 at 57–59. Relying mainly on out-of-circuit authority, they say the dis-trict court should have separately determined whether the appeal itself was independently exceptional. This is wrong for three reasons.

First, they didn't ask the district court to conduct a separate excep-tional-case analysis of the prior appeal. *See* SER-70, 74–76. The Court should thus deem this argument forfeited. *Momox-Caselis*, 987 F.3d at 841. The district court cannot properly be faulted for addressing the prior appeal in tandem with the rest of the litigation.

Second, unlike the First Circuit's holding in *Tamko Roofing Prod-ucts, Inc. v. Ideal Roofing Co., Ltd.*, 294 F.3d 227 (1st Cir. 2002), when a prevailing party seeks fees under 15 U.S.C. § 1117(a) in the Ninth Circuit a separate exceptional-case analysis of an appeal is not required. Both ThermoLife and the Fifth Circuit misread *U-Haul International Inc. v.*

*Jartran, Inc.*, 793 F.2d 1034, 1043–44 (9th Cir. 1986). *See* Dkt. 29 at 57; *Alliance for Good Gov't v. Coalition for Better Gov't*, 998 F.3d 661, 667 n.31 (5th Cir. 2021). Rather than establishing a general rule that mandates a separate analysis under 15 U.S.C. § 1117(a) for an appeal, *U-Haul* merely decided a motion made on appeal to recover fees incurred in litigating the same appeal. And in *Committee for Idaho's High Desert, Inc. v. Yost*, this Court awarded appellate fees under 15 U.S.C. § 1117(a) *without* independently assessing whether the appeal itself was exceptional: "Because the district court found" the case exceptional, the movant "is therefore entitled to reasonable attorney's fees on appeal." 92 F.3d 814, 825 (9th Cir. 1996); *see Kiva Kitchen & Bath, Inc. v. Capital Distrib., Inc.*, 681 F. Supp. 2d 807, 810–11 & n.3 (S.D. Tex. 2010) (discussing *Yost* and distinguishing *U-Haul*).

Were the Court to reach this issue, it should follow *Yost* like this Court did in *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223–24 (9th Cir. 2023). In that case, this Court both (1) affirmed a damages award under the Lanham Act and a finding that the case was exceptional and (2) awarded appellate fees without independently assessing whether the appeal itself was exceptional. *Id.* The

45

"Lanham Act does not distinguish between an 'exceptional case' at trial and an 'exceptional case' for appellate purposes." *Kiva*, 681 F. Supp. 2d at 810–11 & n.3; *cf. In re Schwartz-Tallard*, 803 F.3d 1095, 1099 (9th Cir. 2015) (noting that prevailing-party fee statutes "usually [function] in the context of the action as a whole rather than a discrete proceeding").

Third, the Court need not reach this issue to affirm the fee award for the prior appeal because the district court *did* find that the prior appeal was "exceptional." *See* 1-ER-43, 52–57. "[T]he fact that [ThermoLife and Muscle Beach] chose to pursue this litigation in two Districts *and on appeal to the Ninth Circuit* despite knowing that their claims were meritless," the district court found, "further supports an 'exceptional case' finding and an award of fees and costs because it underscores the frivolous, vexatious, and unreasonable nature of [their] claims." 1-ER-52 (emphasis added). The prior appeal itself "needlessly dr[ew] out the case and caus[ed BPI] to waste time and expense." 1-ER-57 & n.5.

ThermoLife and Muscle Beach surmise that, when this Court reversed dismissal for lack of Article III standing, *id.* at *1, they partially "prevailed." Appellant's Br., 58. That's dead wrong. The judgment of dismissal was affirmed on an alternative basis, and they received no relief.

46

This Court held that, under the Lanham Act, ThermoLife's allegations of harm were "speculative at best" and Muscle Beach "failed to allege *any* facts" showing harm. *BPI*, 2022 WL 612669, at *2–3.

The Court should affirm the award of fees for the prior appeal.

## II. The district court correctly and reasonably awarded BPI attorneys' fees under Rule 41(d).

Federal Rule of Civil Procedure 41(d) empowers courts to award a defendant its "costs" incurred in defending a voluntarily dismissed action when the plaintiff refiles the same claim against the same defendant:

> **Costs of a Previously Dismissed Action.** If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d). The district court held that this action, filed in Florida (No. 20-cv-61373) and transferred to Arizona (No. 20-cv-02091), was "based on the same claims, against the same Defendant," BPI, as the earlier, voluntarily dismissed action (No. 18-cv-04663)—a ruling not appealed. 1-ER-59; *see* 1-ER-48–50.

The district court also held that Rule 41(d)'s use of "costs" permits an award of attorneys' fees. 1-ER-58–60. Finding that the previous action was "exceptional" under 15 U.S.C. § 1117(a) and pursued in bad faith,

the district court awarded BPI its fees for defending the precursor under Rule 41(d) on both grounds. 1-ER-58–61.

This Court should hold that attorneys' fees incurred in defending a voluntarily dismissed action are awardable under Rule 41(d) both when an underlying statute provides for fees and when the prior action was litigated in bad faith. And the Court should affirm the award of fees to BPI on these grounds.

A.  *The Circuits disagree over, and this Court has not decided, whether attorneys' fees are awardable under Rule 41(d).*

As this Court has explained, the Circuits take four positions on whether "costs" in Rule 41(d) permits an award of attorneys' fees. *Moskowitz*, 37 F.4th at 542–46; Danielle Bolong, *Award of Attorney's Fees as Part of Costs Under Fed. R. Civ. P.41(d)(1) Where Dismissed Claims Are Refiled*, 75 A.L.R. FED. 3D 1 (2022).

**Position 1.** The Sixth Circuit holds that "attorney fees are [never] available under Rule 41(d)" because "the rule does not explicitly provide for them." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000); *see Moskowitz*, 37 F.4th at 543–44.

**Position 2.** The Eighth Circuit holds, with no apparent rationale, that attorneys' fees are always awardable under Rule 41(d) in the district

court's unfettered discretion or by right. *Kent v. Bank of Am., N.A.*, 518 F. App'x 514, 517 (8th Cir. 2013) (citing *Evans v. Safeway Stores, Inc.*, 623 F.2d 121, 122 (8th Cir. 1980)); *see Moskowitz*, 37 F.4th at 544.

**Position 3.** Several Circuits hold that attorneys' fees are available under Rule 41(d) when "the substantive statute underlying the claim provides for attorney's fees." *Moskowitz*, 37 F.4th at 544.

The Fourth Circuit holds that "a district court may award attorneys' fees under [Rule 41(d)] … where the underlying statute provides for attorneys' fees." *Andrews v. Am.'s Living Centers, LLC*, 827 F.3d 306, 311 (4th Cir. 2016); *see Moskowitz*, 37 F.4th at 544. In *Andrews*, fees were potentially available under Rule 41(d) because the underlying statute says a "court 'shall … allow a reasonable attorney's fee to be paid by the defendant.'" 827 F.3d at 312 (quoting 29 U.S.C. § 216(b)).

The Third, Fifth, and Seventh Circuits have taken a similar (though not identical) position. *See Moskowitz*, 37 F.4th at 544. "Fee awards are permitted under Rule 41(d) only if the underlying statute defines 'costs' to include fees." *Portillo v. Cunningham*, 872 F.3d 728, 739 (5th Cir. 2017); *accord Garza v. Citigroup Inc.*, 881 F.3d 277, 279 (3d Cir. 2018) ("[A]ttorneys' fees may only be awarded as 'costs' under Rule 41(d)

when the substantive statute under which the lawsuit was filed defines costs to include attorneys' fees."); *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000) (A "party may recover reasonable attorneys' fees as part of its 'costs' under Rule 41(d) only where the underlying statute defines costs to include attorneys' fees.").

The Fifth and Seventh Circuits applied Rule 41(d) in cases where the underlying fee-shifting statute was 42 U.S.C. § 1988, which says the "court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs …." *Portillo*, 872 F.3d at 739 (5th Cir.); *Esposito*, 223 F.3d at 500–01 (7th Cir.). There was no underlying statute in *Garza*, 881 F.3d at 284 (3d Cir.). These courts thus had no occasion to address a fee-shifting statute like 15 U.S.C. § 1117(a), which expressly provides for "attorney fees" but which does not define (or need to define) "costs" as including them.

**Position 4.** The Second, Fourth, and Tenth Circuits have held that attorneys' fees are awardable under Rule 41(d) when the voluntarily dismissed action involved impermissible forum-shopping or was otherwise litigated unreasonably, vexatiously, or in bad faith. *See Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 24–26 (2d Cir. 2018); *Andrews*, 827

F.3d at 311 (4th Cir.) ("A court may also, within its discretion, award attorneys' fees where … the plaintiff has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons ….'"); *Meredith v. Stovall*, 216 F.3d 1087 (10th Cir. 2000) (table); *Moskowitz*, 37 F.4th at 544–45 & n.8.

The Seventh Circuit has strongly suggested the same. *See Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159, at *5–6 (7th Cir. 2000) (table) (affirming fee award based on Lanham Act and bad faith); *Esposito*, 223 F.3d at 501 ("[A]ttorneys' fees are not a recoverable cost of litigation under Rule 41(d) unless the substantive statute which formed the basis of the original suit allows for the recovery of such fees as costs *(or unless such fees are specifically ordered by the court)*." (emphasis added)); *see Andrews*, 827 F.3d at 311 (*Esposito* and *Sanderson* recognize "an alternative way to award attorneys' fees as part of costs" when "the opposing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"); *Moskowitz*, 37 F.4th at 551 (Wardlaw, J., concurring & dissenting) (citing *Andrews*).

**Ninth Circuit.** In *Moskowitz*, this Court held that Rule 41(d)'s use of "costs" does not provide for fees "as a matter of right," as the district court in that case had ruled. 37 F.4th at 545–46. But the majority left

51

open the two questions whether Rule 41(d) permits an award of attorneys' fees (1) when an underlying statute provides for fees or (2) when the voluntarily dismissed action was litigated in bad faith. This case squarely presents both questions. They are reviewed de novo. *Moskowitz*, 37 F.4th at 542.[7]

> B. *The Court should hold that attorneys' fees are awardable under Rule 41(d) when an underlying statute provides for attorneys' fees.*

Rule 41(d) does not expressly reference attorneys' fees. And neither its text nor the Advisory Committee notes defines "costs." But this doesn't end the matter, as ThermoLife and Muscle Beach contend. Dkt. 29 at 50–54. "The absence of specific reference to attorney's fees is not dispositive if [a] statute otherwise evinces an intent to provide for such fees." *Key Tronic Corp. v. United States*, 511 U.S. 809, 815 (1994). Rule 41, having been approved by Congress, is tantamount to a statute. *Moskowitz*, 37 F.4th at 547–48 (Wardlaw, J., concurring & dissenting); *Esquivel v. Arau*, 913 F. Supp. 1382, 1390 (C.D. Cal. 1996). Several courts have explained

---

[7] Judge Wardlow would have held that attorneys' fees are awardable under Rule 41(d) when an underlying statute provides for fees or the plaintiff acted in bad faith. *Moskowitz*, 37 F.4th at 546 (Wardlaw, J., concurring & dissenting).

52

how Rule 41(d)'s use of "costs" provides a "sufficiently 'specific and explicit' indication of its intent to overcome" the American rule. *Moskowitz*, 37 F.4th at 547 (Wardlaw, J., concurring & dissenting) (quoting *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 30 (2019)).

First, Rule 41(d)'s use of "costs" without defining it supports interpreting it flexibly. *Esquivel*, 913 F. Supp. at 1387 n.8. "The term 'costs' as used in the Federal Rules is a variable one ...." *Id.* at 1390. Because Rule 41(d) "incorporates no ... definition of costs, either expressly or by reference," its inclusion of attorneys' fees is "not precluded." *Horowitz*, 888 F.3d at 25 (comparing rules' varying use of "costs"); *cf. Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (listing "litigation costs" among typical statutory terms for departing from American Rule); *Marek v. Chesny*, 473 U.S. 1, 9 n.2 (1985).

The Rules' flexible use of "costs" is illustrated, for example, by Federal Rule of Civil Procedure 54(d)(1). Its "description of taxable costs is entitled 'Costs Other than Attorneys' Fees,' suggesting that the term ['costs'] used without modification may encompass both taxable costs and attorneys' fees." *Esquivel*, 913 F. Supp. at 1390. Rule 54(d)(1) expressly awards court costs (but not fees) to the prevailing party automatically.

53

But Rule 41(d) "has no such restriction on the court's discretion ...." *Moskowitz*, 37 F.4th at 549 (Wardlaw, J., concurring & dissenting). This suggests that "costs" in Rule 41(d) has a broader meaning.

Federal Rule of Civil Procedure 68(d)'s use of "costs" even more strongly supports the availability of fees under Rule 41(d). Under Rule 68(d), when an offer of judgment has been rejected by a party that later obtains a less favorable result, "the offeree must pay the *costs* incurred after the offer was made." Fed. R. Civ. P. 68(d) (emphasis added). As with Rule 41(d), the "drafters of Rule 68 did not define the term ['costs']; nor is there any explanation whatever as to its intended meaning in the history of the Rule." *Marek*, 473 U.S. at 8–9. Considering the rule's purpose, the Supreme Court held that Rule 68(d) is "intended to refer to all costs properly awardable"—including attorneys' fees—when an "underlying statute defines 'costs' to include attorney's fees ...." *Marek*, 473 U.S. at 9 (applying 42 U.S.C. § 1988); *id*. at 5–7, 11 (discussing purpose). Several courts have relied on *Marek* to hold that attorneys' fees are awardable under Rule 41(d) when an underlying statute provides for fees. *See, e.g.*, *Moskowitz*, 37 F.4th at 547–49 (Wardlaw, J., concurring & dissenting);

54

*Horowitz*, 888 F.3d at 25; *Garza*, 881 F.3d at 282–84; *Esposito*, 223 F.3d at 500–02; *Andrews*, 827 F.3d at 310–11; *Esquivel*, 913 F. Supp. at 1390.

Second, Rule 41's structure supports interpreting "costs" as including attorneys' fees. Rule 41(a)(2) says that, with exceptions, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." This subsection mentions neither "costs" nor "attorneys' fees." *Esquivel*, 913 F. Supp. at 1390. Yet this Court has "repeatedly stated that a district court can award costs and attorney's fees as a condition of dismissal without prejudice under Rule 41(a)(2)." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1286 (9th Cir. 2023).

It would be inconsistent to hold that "a court has discretion to condition Rule 41(a)(2) voluntary dismissal without prejudice on payment of attorneys' fees, but that a court does *not* have discretion to exact the same payment from a plaintiff who has noticed a Rule 41(a)(1) dismissal in a previous case" under Rule 41(d). *Moskowitz*, 37 F.4th at 550 (Wardlaw, J., concurring & dissenting) (quoting *Esquivel*, 913 F. Supp. at 1391); *accord Esposito*, 223 F.3d at 501. "Any interpretation of Rule 41(d) excluding attorney's fees would therefore be in plain tension, or even outright conflict, with [the Ninth Circuit's] longstanding precedent about the

55

availability of attorney's fees under Rule 41(a)(2)." *Moskowitz*, 37 F.4th at 550 (Wardlaw, J., concurring & dissenting).

Third, awarding fees under Rule 41(d) is consistent with congressional policy. Subsections (a)(2) and (d) share the same objective: "Rule 41 protects defendants from vexatious plaintiffs." *U.S. ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998); *see Esquivel*, 913 F. Supp. at 1388.

More specifically, Rule 41(d) is intended to deter and compensate for vexatious and harassing litigation and impermissible forum-shopping. *See Moskowitz*, 37 F.4th at 550 (Wardlaw, J., concurring & dissenting); *Hacopian v. U.S. Dep't of Labor*, 709 F.2d 1295, 1297 (9th Cir. 1983); *Reid v. I.C. Sys. Inc.*, 304 F.R.D. 253, 255 (D. Ariz. 2014); *Esquivel*, 913 F. Supp. at 1391. Given the typically great disparity between the respective amounts of court costs and attorneys' fees in a case, Rule 41(d) "would be rendered toothless if attorney's fees were excluded in all cases." *Moskowitz*, 37 F.4th at 550 (Wardlaw, J., concurring & dissenting); *accord Horowitz*, 888 F.3d at 25–26; *Andrews*, 827 F.3d at 309; *Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F. Supp. 3d 1009, 1028 (C.D. Cal. 2022). Viewing "costs" as used in Rule 41(d) to including attorneys' fees

"best furthers the objective of the Rule." *Cf. Marek*, 473 U.S. at 6 (discussing Rule 68).

Fourth, interpreting Rule 41(d) this way complements the underlying fee-shifting statute at issue here, 15 U.S.C. § 1117(a). Protecting defendants from vexatious plaintiffs by interpreting Rule 41(d) as permitting fee awards "is in no sense inconsistent with the congressional policies underlying" the statute, *cf. Marek*, 473 U.S. at 11, which is intended to deter and compensate for similarly vexatious conduct in "exceptional" cases. *See* 15 U.S.C. § 1117(a); *supra*, 23–24.

A few courts have acknowledged that fees may be available under Rule 41(d) based on the Lanham Act. *Andrews*, 827 F.3d at 311 (citing *Sanderson*); *Sanderson*, 248 F.3d 1159, at *5; *LegalForce, Inc. v. LegalZoom.com, Inc.*, 18-cv-07274, 2019 WL 1170777, at *2 (N.D. Cal. Mar. 13, 2019).

More courts, including the Fourth Circuit, have held that fees are available under Rule 41(d) even when the underlying fee-shifting statute does not—as 15 U.S.C. § 1117(a) does not—expressly say that attorneys' fees may be awarded as part of "costs." *See, e.g., Andrews*, 827 F.3d at 311–12 (29 U.S.C. § 216(b)); *Lincoln Harbor Enters., LLC v. Hartz*

*Mountain Indus., Inc.*, 19-cv-12520, 2020 WL 563634, at *11 (D.N.J. Feb. 4, 2020) (N.J. Stat. Ann. § 2A:35-10(a)); *Ariz. Med. Billing Inc. v. FSIX LLC*, 17-cv-04742, 2019 WL 13194907, at *2 (D. Ariz. Jan. 22, 2019) (31 U.S.C. § 3730(d)(4)); *Wolf v. Pac. Nat'l Bank, N.A.*, 09-cv-21531, 2010 WL 1462298, at *3 (S.D. Fla. Mar. 18, 2010) (Fla. Stat. § 448.104); *EOS GMBH Electro Optical Sys. v. DTM Corp.*, 00-cv-1230, 2002 WL 34536678, at *4–5 (C.D. Cal. Mar. 18, 2002) (35 U.S.C. § 285). *But see, e.g.*, *Uniloc USA, Inc. v. Blackboard, Inc.*, 17-cv-753, 2018 WL 4609957, at *2–3 (W.D. Tex. Sept. 24, 2018) (35 U.S.C. § 285).

*Marek* mentions the "interplay" between the use of "costs" in both Rule 68(d) and the underlying fee-shifting statute, 42 U.S.C. § 1988, as do *Esposito* and *Portillo*. *Marek*, 473 U.S. at 9. But these courts weren't asked to consider a statute like 15 U.S.C. § 1117(a), which provides for fees without saying they're awardable as part of "costs." The distinction between a fee-shifting statute that makes attorneys' fees available and one that makes attorneys' available as part of taxable "costs" seems more formal than substantive. And it should make no difference when, as here, awarding fees under Rule 41(d) is consistent with the policies embodied in 15 U.S.C. § 1117(a). *Marek*'s reasoning supports awarding fees under

Rule 41(d) even when the underlying fee-shifting statute does not expressly mention "costs." *See Lincoln Harbor*, 2020 WL 563634, at *11; *Anders v. FPA Corp.*, 164 F.R.D. 383, 388–91 (D.N.J. 1995).

The Supreme Court cases that ThermoLife and Muscle Beach cite don't change this analysis. Dkt. 29 at 51–52; *Peter*, 589 U.S. at 29–33 (addressing whether "expenses" includes attorneys' fees); *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 338–46 (2019) (addressing scope of expenses, not attorneys' fees, available under "full costs"); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murph*y, 548 U.S. 291, 297–303 (2006) (addressing whether "costs" includes expert-witness fees). These cases further illustrate how the meaning of "costs" varies depending on context.

The Court should hold that attorneys' fees are available under Rule 41(d) when they're available under 15 U.S.C. § 1117(a).[8]

---

[8] ThermoLife has never argued that BPI was not a "prevailing" party under 15 U.S.C. § 1117(a) in the previous action because it was voluntarily dismissed. ThermoLife has thus forfeited any contention that this would deprive BPI of the ability to recover fees via the combination of Rule 41(d) and 15 U.S.C. § 1117(a). *See Momox-Caselis*, 987 F.3d at 841. Regardless, for purposes of awarding fees under Rule 41(d), a defendant should be deemed a prevailing party in the prior, voluntarily dismissed action when it has prevailed in the subsequent, similar litigation. This holding would be consistent with *Marek*, *Portillo*, *Esposito*, *Garza*, and *Andrews* and Rule 41(d) itself, which treat the voluntarily dismissed action and the refiled action as effectively a single litigation. To hold otherwise would

C.  *The Court should hold that attorneys' fees are available under Rule 41(d) when the previous action was litigated in bad faith.*

Additionally, and alternatively, the Court should hold that attorneys' fees are available under Rule 41(d) when the voluntarily dismissed action was litigated vexatiously, wantonly, oppressively, or in bad faith. *See Moskowitz*, 37 F.4th at 550–51 (Wardlaw, J., concurring & dissenting). There are sound reasons for adopting this position.

First, as discussed above, Rule 41(d) is intended to deter impermissible forum-shopping and vexatious litigation and to compensate defendants affected by such conduct. *Supra*, 54–56. Prohibiting courts from awarding attorneys' fees under Rule 41(d) would limit their enforcement authority to "barely a slap on the wrist." *Moskowitz*, 37 F.4th at 551 (Wardlaw, J., concurring & dissenting). This would undermine, rather than advance, Rule 41(d)'s objectives. *Horowitz*, 888 F.3d at 25.

Second, Rule 41(d)'s use of "costs" can reasonably be viewed as implicitly codifying the common-law, bad-faith exception to the American rule. *See Moskowitz*, 37 F.4th at 550–51 (Wardlaw, J., concurring & dissenting). To protect the integrity of judicial process, federal courts have

---

eviscerate these authorities and congressional intent because voluntary dismissal is itself the predicate for applying Rule 41(d).

the inherent, equitable power to award attorneys' fees "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1298 (9th Cir. 1982) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)). This inherent power may not extend to a prior, voluntarily dismissed case because a court can decide only cases that are before it. But when, as here, the present case and the prior case are effectively the same case, Rule 41(d) is intended to fill the procedural gap.

Holding that attorneys' fees are available under Rule 41(d) to deter and compensate for prior, related bad-faith conduct is reasonably limited in scope. It applies only to a prior action that is substantially the same as the present one. And courts find bad faith "only in exceptional cases and for dominating reasons of justice." *Dogherra*, 679 F.2d at 1298 (citation omitted).

The Court should hold that attorneys' fees are available under Rule 41(d) when the non-prevailing party acted in bad faith, vexatiously, wantonly, or for oppressive reasons in litigating the prior, voluntarily dismissed action. *See Milkcrate*, 619 F. Supp. 3d at 1026–28.

D.   *The district court reasonably found that the previous action was "exceptional" and litigated in bad faith.*

The district court's "underlying finding" that ThermoLife litigated the previous action in "bad faith," 1-ER-60, is reviewed for clear error. *Newtok Vill. v. Patrick*, 21 F.4th 608, 615 (9th Cir. 2021). Also reviewed for clear error are the district court's findings that, throughout both actions, ThermoLife and Muscle Beach: (1) engaged in impermissible forum-shopping, 1-ER-46–52; (2) litigated in an "unreasonable manner," knowing "their claims were meritless … frivolous, vexatious, and unreasonable," 1-ER-52, and without "any reasonable or legal basis," 1-ER-53; and (3) intentionally engaged in the "vexatious and harassing pursuit of claims" against multiple parties, 1-ER-57. Awarding fees promotes considerations of compensation and deterrence. *Id.*

ThermoLife and Muscle Beach don't contend that any of this fact-finding was clearly erroneous. *See T.B.*, 806 F.3d at 474. Nor was it. For this reason, and all the reasons explained above, *supra*, 17–19, 25–43, the Court should hold that the district court did not abuse its discretion by awarding BPI its fees incurred in defending the previous action under Rule 41(d). *See SunEarth*, 839 F.3d at 1180–81. The previous action is exceptional under 15 U.S.C. § 1117(a), and it was litigated in bad faith.

62

ThermoLife and Muscle Beach contend that the previous action was reasonable because the "availability of fees under Rule 41(d) was and still is a debatable issue." Dkt. 29 at 70. This argument misses the point entirely. The question whether fees are available under Rule 41(d) *is* debatable. But it was never debated, nor could it have been, in the previous action, precisely because the action had not yet been voluntarily dismissed. ThermoLife's cannot rehabilitate its bad-faith litigation of the previous action by invoking a legal debate that could arise only later (and which itself has been occasioned by ThermoLife's prior bad faith)

## III.  The amount of the fee award is reasonable and should be affirmed.

To decide the reasonableness of a fee award, a court must: (1) determine whether the rates and number of hours expended are reasonable; and (2) apply the remaining factors to determine whether or to what extent the amount should be adjusted. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1023 (9th Cir. 2019). The amount so awarded is reviewed for abuse of discretion. *SunEarth*, 839 F.3d at 1181.

The Court should affirm the district court's award of $486,207 as reasonable. 1-ER-3, 40. Alternatively, to account for a computational error, the Court should affirm the award as modified to $454,339.

A.   *Itemizations of the amounts charged and the district court's reductions.*

1.   Amounts charged by BPI.

BPI sought a total of $530,332. 1-ER-3; SER-39. This was based on 805 hours of legal work at an overall effective hourly rate of $659 per hour. *See* 1-ER-10; 2-ER-89, 263, 270, 296. Three law firms represented BPI. 1-ER-10–11.

First, BPI's lead counsel was Venable LLP based in Los Angeles, California, 2-ER-321–28, which did 72% of the work and charged $417,476 for 581 hours, at an overall effective hourly rate of $719. 1-ER-10, 19–26; 2-ER-192–263 (time entries); 2-ER-87–89 (time entries), 235; 2-ER-321–28 (rates).

Second, BPI's local counsel in Arizona was Quarles & Brady LLP in Phoenix, 2-ER-315–19, which did 16% of the work and charged $73,296 for 125 hours, at an overall effective hourly rate of $584. *See* 1-ER-10, 26–27; 2-ER-272–96 (time entries); 2-ER-315–19 (rates).

Third, for assistance, BPI hired Gregory L. Hillyer of Hillyer Legal PLLC, of Washington D.C., lead counsel for BPI in its Florida action against ThermoLife, Muscle Beach, and Kramer (No. 19-cv-60505). 1-ER-10–11, 27; 6-ER-1256. Hillyer did 12% of the work, relating to the

previous action, charging $39,560 for 99 hours, at $400 per hour. 2-ER-265–70 (time entries); 2-ER-333–36 (rates).

The following chart estimates the approximate total hours and amounts for the four phases of work done by BPI's attorneys. *See* 1-ER-10, 37–38 & n.21; No. 21-15339, Dkt. 42.

| Phase of Litigation | Date Range | Approximate Hours | Approximate Amount |
|---|---|---|---|
| Previous action, *ThermoLife v. BPI* (D. Ariz. No. 18-cv-04663) | 12/12/2018 – 2/26/2020 | 295 | $159,000 |
| Refiled action, *ThermoLife & Muscle Beach v. BPI* (S.D. Fla. No. 20-cv-61373, D. Ariz. No. 20-cv-02091) | 2/27/2020 – 2/24/2021 | 168 | $137,000 |
| First appeal, *ThermoLife & Muscle Beach v. BPI* (9th Cir. No. 21-15339) | 2/25/2021 – 3/23/2022 | 153 | $106,000 |
| Fee litigation, *ThermoLife & Muscle Beach v. BPI* (D. Ariz. No. 20-cv-02091) | 3/24/2022 – 5/19/2023 | 189 | $128,000 |
| **Approximate Totals:** | | 805 | $530,000 |

65

2.    District court's reductions and award.

Applying the reasonableness factors, 1-ER-9–10, the district court awarded BPI $486,207, which represents an 8% reduction from the amount sought. 1-ER-2, 40.

First, the district court awarded BPI, as the prevailing party, only its fees incurred in defending ThermoLife and Muscle Beach's false-advertising claims under the Lanhan Act. 1-ER-4–8. It cut $7,035 for fees spent on defending claims for common-law unfair competition, civil conspiracy, and violation of Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501.201, et seq. ThermoLife and Muscle Beach overestimate the amount spent on non-Lanham Act issues. Dkt. 29 at 1.

Second, the district court reduced the amount of fees charged for preparing BPI's motion to dismiss ThermoLife's First Amended Complaint in the previous action, 4-ER-921–59, by $18,540. 1-ER-10–14.

 Third, rejecting after-the-fact itemizations, the district court applied a 20% reduction to all block-billed time entries exceeding three hours each by attorneys Venable LLP, BPI's lead counsel, and Hillyer. 1-ER-29–36. This reduced the award by $18,550.

Fourth, the district court reduced by 25%, or $31,868, the estimated amount Venable charged for moving for fees, $127,472, which the district court found disproportionate to the overall defense costs. 1-ER-36–39.

As ThermoLife and Muscle Beach note, Dkt. 29 at, 69–70, in calculating its total award the district court omitted the $31,868 reduction. It thus reduced the $530,332 amount sought by only $44,125, or 8.3%, to arrive at $486,207. When the omitted reduction is included, the total decreases by $75,993 to $454,339, a 14.3% reduction.

B.   *ThermoLife and Muscle Beach's scattershot objections to the fee amount lack merit.*

ThermoLife and Muscle Beach don't appeal the reasonableness of the hourly rates. *See* 1-ER-17–27, 43. They make a shotgun attack on the hours spent. These arguments lack merit.

First, the district court has already provided ample reasons to reject ThermoLife and Muscle Beach's contention that BPI's attorneys' engaged in excessive and duplicative work. Dkt. 29 at 59–67. They have no legitimate basis for contending that Venable didn't need local counsel or need to coordinate its litigation strategy with BPI's counsel in its Florida lawsuit (in which it prevailed against ThermoLife, Muscle Beach, and Kramer). *See* 1-ER-10–14. Quarles & Brady's work as local counsel consisted

"entirely of reasonable, procedure-related tasks." 1-ER-14. And to the extent Venable and Hillyer's work *was* duplicative or too much, the district court has already reasonably reduced the amount. *Id*.

ThermoLife and Muscle Beach fail to show how the district court abused its discretion by not cutting more than $7,035 for work on non-Lanham Act issues. Dkt. 29 at 66–69; 1-ER-5–8. They mischaracterize the denial of BPI's alternative claim for fees under 28 U.S.C. § 1927 as "unsuccessful"; having awarded the same fees on other grounds, the district court denied it as *moot*. 1-ER-62. Reviewing ThermoLife's patents was reasonable given that its claims expressly depended on them. 1-ER-7–8. And litigation routinely requires the analyses of insurance coverage, indemnification, and audit-related issues. 1-ER-8.

ThermoLife and Muscle Beach forget that such work was caused by their own obstinate pursuit of "meritless claims for over two years in two Districts and on appeal to the Ninth Circuit." 1-ER-57. The district court's findings strongly suggest that they *intended* to cause BPI to "waste time and expense" defending their claims—the one part of this litigation in which they succeeded. 1-ER-57. Contrary to ThermoLife and Muscle Beach's depiction of "triplicated" work, Dkt. 29 at 54–55, the fact

68

that BPI incurred over half-a-million dollars in fees without advancing beyond the motion-to-dismiss stage just illustrates how adept ThermoLife has become at dragging out litigation (including on appeal) to burden the dietary-supplement companies it chooses to target.[9]

Second, the district court agreed that too much was sought for preparing BPI's fee motion, $127,472, and it accordingly reduced the amount by $31,868, or 25%. Dkt. 29 at 65; 1-ER-36–39. The district court just forgot to subtract that amount from its total. *Supra*, 66. The Court could choose to correct that apparently inadvertent omission by reducing the fee award by $31,868 to $454,339. Alternatively, the Court could affirm the award of $486,207 because that amount also is reasonable.

Third, ThermoLife and Muscle Beach fail to explain how the district court abused its discretion by not further reducing the award by $10,000 for preparing an unfiled fee motion after ThermoLife voluntarily dismissed its initial action, when that work was useful later on. Dkt. 29 at 65; 1-ER-39.

---

[9] ThermoLife and Muscle Beach's asides concerning BPI's bankruptcy, Dkt. 29 at 63–64, are both irrelevant and forfeited, having not been mentioned below. SER-15–34, 59–83; *Momox-Caselis*, 987 F.3d at 841.

69

Fourth, the district court already reasonably reduced by 20% all block-billed time entries of three hours or more each (totaling $18,550). *See* Dkt. 29 at 65–66; *supra*, 66.

In sum, apart from a calculation error by the district court, ThermoLife and Muscle Beach fail to show that the district court's award of fees was unreasonable in any way.

## CONCLUSION

The Court should affirm the ruling that this is an "exceptional case" under 15 U.S.C. § 1117(a), which entitles BPI to recover its attorneys' fees from ThermoLife and Muscle Beach for all prior litigation, including the voluntarily dismissed action and the prior appeal.

The Court should affirm the holding that attorneys' fees are available under Rule 41(d) when an underlying statute provides for fees or when the plaintiff had litigated the previous action vexatiously, wantonly, oppressively, or in bad faith.

The Court should affirm as reasonable the award of $486,207 in attorneys' fees to BPI. Alternatively, to correct the district court's apparently inadvertent omission of a $31,868 reduction, the Court should modify the award to $454,339 and affirm it as modified.

In the further alternative, were the Court to conclude that attorneys' fees are not legally available to BPI under Rule 41(d) for defending the previous action, the Court should reduce the fee award by $159,000, the approximate amount spent on it. The Court should then affirm the award as modified.

October 11, 2024

Respectfully submitted,

s/ Robert F. Parsley

Robert F. Parsley
Meredith C. Lee
MILLER & MARTIN PLLC
832 Georgia Ave., Ste. 1200
Chattanooga, TN 37402
T: (423) 785-8211
bob.parsley@millermartin.com
meredith.lee@millermartin.com

*Counsel for Defendant–Appellee
BPI Sports, LLC*

## STATEMENT OF RELATED CASES

Under 9th Cir. R. 28-2.6, BPI Sports, LLC states that it is unaware of any related cases pending in this Court.

October 11, 2024

<u>s/ Robert F. Parsley</u>

MILLER & MARTIN PLLC

*Counsel for Defendant–Appellee BPI Sports, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 23-15903

I am the attorney or self-represented party.

**This brief contains** 13,995 **words**, including 749[*] words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief (select only one):

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (*select only one*):

    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Robert F. Parsley*        **Date** October 11, 2024
*(use "s/[typed name]" to sign electronically-filed documents)*

**\*** The charts on pages 5–9 and 64–65 contain a total of 749 words.

---

**Form 8**                *Rev. 12/01/22*

# ADDENDUM

## Table of Contents

15 U.S.C. § 1117...................................................................A-2

Fed. R. Civ. P. 41...............................................................A-5

# 15 U.S.C. § 1117

## (a) Profits; damages and costs; attorney fees

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

## (b) Treble damages for use of counterfeit mark

In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title or section 220506 of Title 36, in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of--

> (1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d)

of this title), in connection with the sale, offering for sale, or distribution of goods or services; or

(2) providing goods or services necessary to the commission of a violation specified in paragraph (1), with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.

In such a case, the court may award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of Title 26, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate.

## (c) Statutory damages for use of counterfeit marks

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

## (d) Statutory damages for violation of section 1125(d)(1)

In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial

court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

## (e) Rebuttable presumption of willful violation

In the case of a violation referred to in this section, it shall be a rebuttable presumption that the violation is willful for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the violation. Nothing in this subsection limits what may be considered a willful violation under this section.

## CREDIT(S)

(July 5, 1946, c. 540, Title VI, § 35, 60 Stat. 439; Pub.L. 87-772, § 19, Oct. 9, 1962, 76 Stat. 774; Pub.L. 93-596, § 1, Jan. 2, 1975, 88 Stat. 1949; Pub.L. 93-600, § 3, Jan. 2, 1975, 88 Stat. 1955; Pub.L. 98-473, Title II, § 1503(2), Oct. 12, 1984, 98 Stat. 2182; Pub.L. 99-514, § 2, Oct. 22, 1986, 100 Stat. 2095; Pub.L. 100-667, Title I, § 129, Nov. 16, 1988, 102 Stat. 3945; Pub.L. 104-153, § 7, July 2, 1996, 110 Stat. 1388; Pub.L. 106-43, § 3(b), Aug. 5, 1999, 113 Stat. 219; Pub.L. 106-113, Div. B, § 1000(a)(9) [Title III, § 3003(a)(2), (b)], Nov. 29, 1999, 113 Stat. 1536, 1501A-549; Pub.L. 107-273, Div. C, Title III, § 13207(a), (b)(11), Nov. 2, 2002, 116 Stat. 1906, 1908; Pub.L. 108-482, Title II, § 202, Dec. 23, 2004, 118 Stat. 3916; Pub.L. 110-403, Title I, §§ 103, 104, Oct. 13, 2008, 122 Stat. 4259.)

## FEDERAL RULE OF CIVIL PROCEDURE 41

**(a) Voluntary Dismissal.**

> **(1)** *By the Plaintiff.*
>
> > **(A)** *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> >
> > > **(i)** a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> > >
> > > **(ii)** a stipulation of dismissal signed by all parties who have appeared.
> >
> > **(B)** *Effect.* Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.
>
> **(2)** *By Court Order; Effect.* Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

**(b) Involuntary Dismissal; Effect.** If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.

**(c) Dismissing a Counterclaim, Crossclaim, or Third-Party Claim.** This rule applies to a dismissal of any counterclaim, crossclaim, or third-party claim. A claimant's voluntary dismissal under Rule 41(a)(1)(A)(i) must be made:

> **(1)** before a responsive pleading is served; or

> **(2)** if there is no responsive pleading, before evidence is introduced at a hearing or trial.

**(d) Costs of a Previously Dismissed Action.** If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

> **(1)** may order the plaintiff to pay all or part of the costs of that previous action; and

> **(2)** may stay the proceedings until the plaintiff has complied.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; December 4, 1967, effective July 1, 1968; March 2, 1987, effective August 1, 1987; April 30, 1991, effective December 1, 1991; April 30, 2007, effective December 1, 2007.)

ADVISORY COMMITTEE NOTES

**1937 Adoption**

**Note to Subdivision (a).** Compare Ill.Rev.Stat. (1937) c. 110, § 176, and *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 26.

Provisions regarding dismissal in such statutes as U.S.C., Title 8, § 164 [see 1329] (Jurisdiction of district courts in immigration cases) and

U.S.C., Title 31, § 232 [now 3730] (Liability of persons making false claims against United States; suits) are preserved by paragraph (1).

**Note to Subdivision (b).** This provides for the equivalent of a nonsuit on motion by the defendant after the completion of the presentation of evidence by the plaintiff. Also, for actions tried without a jury, it provides the equivalent of the directed verdict practice for jury actions which is regulated by Rule 50.

## 1946 Amendment

**Note. Subdivision (a).** The insertion of the reference to Rule 66 correlates Rule 41(a)(1) with the express provisions concerning dismissal set forth in amended Rule 66 on receivers.

The change in Rule 41(a)(1)(i) gives the service of a motion for summary judgment by the adverse party the same effect in preventing unlimited dismissal as was originally given only to the service of an answer. The omission of reference to a motion for summary judgment in the original rule was subject to criticism. 3 *Moore's Federal Practice,* 1938, 3037-3038, n. 12. A motion for summary judgment may be forthcoming prior to answer, and if well taken will eliminate the necessity for an answer. Since such a motion may require even more research and preparation than the answer itself, there is good reason why the service of the motion, like that of the answer, should prevent a voluntary dismissal by the adversary without court approval.

The word "generally" has been stricken from Rule 41(a)(1)(ii) in order to avoid confusion and to conform with the elimination of the necessity for special appearance by original Rule 12(b).

**Subdivision (b).** In some cases tried without a jury, where at the close of plaintiff's evidence the defendant moves for dismissal under Rule 41(b) on the ground that plaintiff's evidence is insufficient for recovery, the plaintiff's own evidence may be conflicting or present questions of credibility. In ruling on the defendant's motion, questions arise as to the function of the judge in evaluating the testimony and whether findings should be made if the motion is sustained. Three circuits hold that as the judge

A-7

is the trier of the facts in such a situation his function is not the same as on a motion to direct a verdict, where the jury is the trier of the facts, and that the judge in deciding such a motion in a non-jury case may pass on conflicts of evidence and credibility, and if he performs that function of evaluating the testimony and grants the motion on the merits, findings are required. *Young v. United States,* C.C.A.9, 1940, 111 F.2d 823; *Gary Theatre Co. v. Columbia Pictures Corporation,* C.C.A.7, 1941, 120 F.2d 891; *Bach v. Friden Calculating Machine Co., Inc.,* C.C.A.6, 1945, 148 F.2d 407. Cf. *Mateas v. Fred Harvey, a Corporation,* C.C.A.9, 1945, 146 F.2d 989. The Third Circuit has held that on such a motion the function of the court is the same as on a motion to direct in a jury case, and that the court should only decide whether there is evidence which would support a judgment for the plaintiff, and therefore, findings are not required by Rule 52. *Federal Deposit Insurance Corp. v. Mason,* C.C.A.3, 1940, 115 F.2d 548; *Schad v. Twentieth Century-Fox Film Corp.,* C.C.A.3, 1943, 136 F.2d 991. The added sentence in Rule 41(b) incorporates the view of the Sixth, Seventh and Ninth Circuits. See also 3 *Moore's Federal Practice,* 1938, Cum.Supplement § 41.03, under "Page 3045"; Commentary, *The Motion to Dismiss in Non-Jury Cases,* 1946, 9 Fed.Rules Serv., Comm.Pg. 41b.14.

## 1963 Amendment

Under the present text of the second sentence of this subdivision, the motion for dismissal at the close of the plaintiff's evidence may be made in a case tried to a jury as well as in a case tried without a jury. But, when made in a jury-tried case, this motion overlaps the motion for a directed verdict under Rule 50(a), which is also available in the same situation. It has been held that the standard to be applied in deciding the Rule 41(b) motion at the close of the plaintiff's evidence in a jury-tried case is the same as that used upon a motion for a directed verdict made at the same stage; and, just as the court need not make findings pursuant to Rule 52(a) when it directs a verdict, so in a jury-tried case it may omit these findings in granting the Rule 41(b) motion. *See generally O'Brien v. Westinghouse Electric Corp.,* 293 F.2d 1, 5-10 (3d Cir. 1961).

As indicated by the discussion in the *O'Brien* case, the overlap has caused confusion. Accordingly, the second and third sentences of Rule 41(b) are

A-8

amended to provide that the motion for dismissal at the close of the plaintiff's evidence shall apply only to nonjury cases (including cases tried with an advisory jury). Hereafter the correct motion in jury-tried cases will be the motion for a directed verdict. This involves no change of substance. It should be noted that the court upon a motion for a directed verdict may in appropriate circumstances deny that motion and grant instead a new trial, or a voluntary dismissal without prejudice under Rule 41(a)(2). *See* 6 *Moore's Federal Practice* ¶59.08[5] (2d ed. 1954); *cf. Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 217, 67 S.Ct. 752, 91 L.Ed. 849 (1947).

The first sentence of Rule 41(b), providing for dismissal for failure to prosecute or to comply with the Rules or any order of court, and the general provisions of the last sentence remain applicable in jury as well as nonjury cases.

The amendment of the last sentence of Rule 41(b) indicates that a dismissal for lack of an indispensable party does not operate as an adjudication on the merits. Such a dismissal does not bar a new action, for it is based merely "on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim." *See Costello v. United States,* 365 U.S. 265, 284-288, 81 S.Ct. 534, 5 L.Ed.2d 551 & n. 5 (1961); *Mallow v. Hinde,* 12 Wheat. (25 U.S.) 193, 6 L.Ed. 599 (1827); Clark, *Code Pleading* 602 (2d ed. 1947); *Restatement of Judgments* § 49, comm. a, b (1942). This amendment corrects an omission from the rule and is consistent with an earlier amendment, effective in 1948, adding "the defense of failure to join an indispensable party" to clause (1) of Rule 12(h).

## 1966 Amendment

The terminology is changed to accord with the amendment of Rule 19. See that amended rule and the Advisory Committee's Note thereto.

## 1968 Amendment

The amendment corrects an inadvertent error in the reference to amended Rule 23.

**1987 Amendment**

The amendment is technical. No substantive change is intended.

**1991 Amendment**

Language is deleted that authorized the use of this rule as a means of terminating a non-jury action on the merits when the plaintiff has failed to carry a burden of proof in presenting the plaintiff's case. The device is replaced by the new provisions of Rule 52(c), which authorize entry of judgment against the defendant as well as the plaintiff, and earlier than the close of the case of the party against whom judgment is rendered. A motion to dismiss under Rule 41 on the ground that a plaintiff's evidence is legally insufficient should now be treated as a motion for judgment on partial findings as provided in Rule 52(c).

**2007 Amendment**

The language of Rule 41 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

When Rule 23 was amended in 1966, Rules 23.1 and 23.2 were separated from Rule 23. Rule 41(a)(1) was not then amended to reflect the Rule 23 changes. In 1968 Rule 41(a)(1) was amended to correct the cross-reference to what had become Rule 23(e), but Rules 23.1 and 23.2 were inadvertently overlooked. Rules 23.1 and 23.2 are now added to the list of exceptions in Rule 41(a)(1)(A). This change does not affect established meaning. Rule 23.2 explicitly incorporates Rule 23(e), and thus was already absorbed directly into the exceptions in Rule 41(a)(1). Rule 23.1 requires court approval of a compromise or dismissal in language parallel to Rule 23(e) and thus supersedes the apparent right to dismiss by notice of dismissal.