No. 23-15903

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

—————————————

THERMOLIFE INTERNATIONAL, LLC, and
MUSCLE BEACH NUTRITION, LLC,
*Plaintiffs-Appellants,*

v.

BPI SPORTS, LLC,
*Defendant-Appellee.*

———————————————————————

On Appeal from the United States District Court for the
District of Arizona, No. 2:30-cv-02091-SPL,
Hon. Steven P. Logan

———————————————————————

## REPLY BRIEF OF APPELLANTS THERMOLIFE INTERNA-
## TIONAL, LLC AND MUSCLE BEACH NUTRITION, LLC

———————————————————————————————

Matthew J. Dowd
Dowd Scheffel PLLC
1717 Pennsylvania Ave., NW
Suite 1025
Washington, D.C. 20006
(202) 995-9175
mdowd@dowdscheffel.com
*Counsel for Appellants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION TO REPLY ................................................. 1

ARGUMENT ........................................................................... 2

I.  No Evidence Supports A Finding Of "Blatant" And
    "Impermissible" Forum Shopping ................................................... 2

    A.  BPI's Case-Timeline Narrative Rests on Speculation
    and Does Not Make Sense ....................................................... 3

    B.  The Evidence Shows Only ThermoLife's Consistent
    Desire to Litigate Against BPI in a Single Forum ................. 7

    C.  BPI's Argument Rests on an Incomplete Definition of
    "Forum Shopping" ................................................................... 11

    D.  The Only Case BPI Cites as Analogous Has a Starkly
    Different Procedural History ................................................. 12

II. Appellants' Litigation Was Not Vexatious Or Frivolous ............. 14

    A.  MBN and BPI are Both on the Retailer Level, and
    Therefore Injury Should Have Been Presumed ................... 14

    B.  BPI Does Not Dispute the Unsettled Nature of the
    Precedent ................................................................................ 15

    C.  BPI's Inaccurate Assertions About ThermoLife's
    Litigation Conduct, Which Was Not "Frivolous" ................. 19

    D.  BPI Cannot Refute that the BPI Litigation Differs
    Starkly From the Other Cases .............................................. 21

    E.  ThermoLife's First Appeal Was Not "Exceptional" ............. 23

    F.  Additional Misplaced Arguments by BPI ............................. 24

i

III.  Rule 41(d) Permits Costs Only, Not Attorney's Fees .................... 26

    A.  The Interpretation of Rule 41(d) Should Not Depend on the Cause of Action ................................................................. 27

    B.  Rule 41(d) Does Not Have an Unwritten "Bad Faith" Exception That Transforms "Costs" into "Fees" .................. 33

IV.  The Amount of Fees Awarded Is Unreasonable ........................... 34

V.  Conclusion ........................................................................ 36

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. America's Living Centers, LLC,*
   827 F.3d 306 (4th Cir. 2016) .......................................................... 19, 30

*Ariix, LLC v. NutriSearch Corp.,*
   985 F.3d 1107 (9th Cir. 2021) ............................................................ 17

*Classic Media, Inc. v. Mewborn,*
   532 F.3d 978 (9th Cir. 2008) ......................................................... 16, 25

*Cloanto Corp. v. Hyperion Entertainment CBVA,*
   No. C18-381-RSM, 2023 WL 3435273
   (W.D. Wash. May 12, 2023) ............................................................... 25

*City of Oakland v. Wells Fargo & Co.,*
   14 F.4th 1030 (9th Cir. 2021) ...................................................... 17, 18

*Collaborative Continuing Education Council Inc. v.
   Starks Realty Group Inc.,*
   No. CV-16-01641-PHX-SRB, 2018 WL 11170216
   (D. Ariz. June 15, 2018) .............................................................. 25, 26

*Cox v. Mariposa County,*
   No. 19-CV-01105-AWI-BAM, 2021 WL 3743280
   (E.D. Cal. 2021) ......................................................................... 11, 12

*Dogherra v. Safeway Stores, Inc.,*
   679 F.2d 1293 (9th Cir. 1982) ............................................................ 33

*Jacobellis v. Ohio,*
   378 U.S. 184 (1964) ........................................................................... 10

*Kent v. Bank of America, N.A.,*
   518 Fed. App'x 514 (8th Cir. 2013) .................................................... 20

*Lexmark International, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) ..................................................................... 17, 22

*Marek v. Chesny,*
  473 U.S. 1 (1984).............................................................. 28, 29, 30, 31

*Memory Lane, Inc. v. Classmates, Inc.,*
  646 Fed. App'x 502 (9th Cir. 2016) ...................................... 24

*Nutrition Distribution LLC v. IronMag Labs, LLC,*
  978 F.3d 1068 (9th Cir. 2020)............................................... 25

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
  572 U.S. 545 (2014)........................................... 18, 23, 24, 25

*Peter v. NantKwest, Inc.,*
  140 S. Ct. 365 (Dec. 11, 2019) ...................................... 30, 31

*Prunty v. Vivendi,*
  195 F. Supp. 3d 107 (D.D.C. 2016)........................................ 35

*Realtime Adaptive Streaming LLC v. Netflix, Inc.,*
  41 F.4th 1372 (Fed. Cir. 2022) ................................... 12, 13

*Seneca Insurance Company, Inc. v. Strange Land, Inc.,*
  862 F.3d 835 (9th Cir. 2017)............................................... 11

*Tamko Roofing Products, Inc. v. Ideal Roofing Co.,*
  294 F.3d 227 (1st Cir. 2002) .............................................. 23

*ThermoLife International, LLC v. Compound Solutions, Inc.,*
  848 Fed. App'x 706 (9th Cir. 2021) ............................. 5, 6, 15

*ThermoLife International LLC v. Human Power of N Company,*
  No. 6:21-cv-001440ADA (W.D. Tex. Feb. 11, 2021) ............................ 6

*TrafficSchool.com, Inc. v. Edriver Inc.,*
  653 F.3d 820 (9th Cir. 2011).............................................. 14

*United States v. Great Northern Railway,*
  287 U.S. 144 (1932)........................................................ 32

*United States v. Lightfoot,*
  626 F.3d 1092 (9th Cir. 2010)............................................. 13

*Vericool World LLC v. Igloo Products Corp.,*
   No. 22-CV-02440-HSG, 2024 WL 3641380
   (N.D. Cal. July. 31, 2024) ............................................................... 25

*Yeager v. Airbus Group SE*,
   No. 8:19-CV-01793-JLS-ADS, 2021 WL 3260624
   (C.D. Cal. July 1, 2021)................................................................. 25

**Statutes**

15 U.S.C. § 1117(a) .............................................................. 27, 29, 32

28 U.S.C. § 1927 ............................................................................ 36

35 U.S.C. § 101 ............................................................................ 13

42 U.S.C. § 1983 ............................................................................ 29

**Rules**

Federal Rule of Civil Procedure 41(a)(1)(A) ............................................ 31

Federal Rule of Civil Procedure 41(a)(2) ............................................... 31

Federal Rule of Civil Procedure 41(d) ....... 2, 26, 27, 28, 30, 31, 32, 33, 36

Federal Rule of Civil Procedure 68............................................... 28, 29

Federal Rule of Evidence 401 .................................................... 8

**Other Authorities**

Black's Law Dictionary (6th ed. 1990) ........................................ 11

HumanN and ThermoLife Mutually Agree To End Legal Disputes (Oct.
   6, 2022), https://www.business-
   wire.com/news/home/20221005005257/en/HumanN-and-ThermoLife-
   Mutually-Agree-To-End-Legal-Disputes ............................................ 6

Oxford English Dictionary (3rd ed. 2024) ............................................ 8

## INTRODUCTION TO REPLY

If this case is affirmed, it may set a record for a fee award—about a half-million dollars—in a case not passing the pleading stage. Such an outcome would rest on several legal errors. It would also send a chilling message to parties seeking to protect their rights in the face of uncertain precedent, and it would discourage aggrieved parties from appealing decisions, even when those decisions rest on flawed legal conclusions.

First, the exceptional-case ruling stands on two points—impermissible forum shopping and meritless litigation—but the evidence supports neither. BPI's deftly crafted narrative avoids the simple explanation, and the only one with evidentiary support—that ThermoLife consistently tried its best to coordinate the Arizona and Florida BPI cases into a single forum. To reduce inefficiencies, ThermoLife moved its Arizona case to BPI's home court in Florida and before the same judge overseeing BPI's retaliatory later-filed suit against ThermoLife. That move took place only after it attempted to coordinate the cases in Arizona. Ultimately, the forum-shopping conclusion invokes nonsensical speculation that ignores the unrebutted evidence—a ThermoLife email, the Kramer Declaration, and the relatedness of the two suits.

Second, the case presents an important and unanswered question: Should Rule 41(d) be applied as the rule is written, limiting compensation to costs and not fees, or should the Court inject implicit exceptions into the rule to allow fee awards, but with a standard that changes from case to case?  The rule should be applied as written, and therefore the Court should hold, as the Sixth Circuit did, that Rule 41(d) does not authorize an award of fees.  BPI's rationales for expanding Rule 41(d) misapply Supreme Court precedent and render Rule 41(d) superfluous.

Third, even if fees are awardable, the amount awarded is an exorbitant windfall.  A half-million dollars for a case that did not proceed past the pleading stage is not "reasonable," as the statute requires.  Awarding that extreme amount for triplicate legal counsel is an abuse of discretion.

## ARGUMENT

## I.    No Evidence Supports A Finding Of "Blatant" And "Impermissible" Forum Shopping

BPI spins a yarn about how Appellants supposedly undertook a scheme of "blatant" and "impermissible" forum shopping.  Those arguments are divorced from the facts and instead rely on speculation, just as the district court's decision did.

2

## A. BPI's Case-Timeline Narrative Rests on Speculation and Does Not Make Sense

BPI spends pages and pages weaving a narrative in which ThermoLife was supposedly running scared and wanted to escape Arizona. The narrative makes for fanciful reading. One must jump through hoops of speculation to reach BPI's conclusion, however. A straightforward review of the facts confirms that the forum-shopping finding rests on unreasonable conjecture, is divorced from the undisputed evidence, and is therefore clearly erroneous and an abuse of discretion.

First, out of eight ThermoLife cases filed in Arizona, the unusual BPI litigation is the only instance in which ThermoLife **ever** sought to move to a different forum. Neither BPI nor the district court acknowledges this undisputed fact. Of course, numerous reasons explain why this case was the only one that ThermoLife tried to move. *See* Opening Br. 11-13; *infra*. And this overlooked fact alone undermines BPI's speculation.

Second, BPI and the district court effectively ignore that, for almost seven full months during the critical period, ThermoLife actively worked to move the BPI Florida litigation to Arizona. From May 2019 through early January 2020, ThermoLife urged the Florida court to transfer BPI's

3

action to Arizona. This fact entirely contradicts the forum-shopping narrative, but it is entirely consistent with ThermoLife's efforts to consolidate the two BPI matters into a single forum. This is another inconvenient fact left unaddressed by BPI and the district court.

Third, and more inconvenient for BPI's forum-shopping theory, ThermoLife continued its streamlining efforts through January 2020, ***even though***, (a) in April and September of 2019, ThermoLife's claims were dismissed in *Neogenis Labs*, Resp. Br. 5-6; SER-0207-0246; (b) in July 2019, ThermoLife's complaint against Compound Solutions was dismissed; and (c) in August 2019, ThermoLife's claims against American Fitness were dismissed, Resp. Br. 6; SER-0176-0185.

At this point, by August 2019, ThermoLife had already received what BPI characterizes as four so-called "repeated, crippling setbacks." Resp. Br. 20. ThermoLife should have packed its bags by that point—if one were to believe BPI's narrative. But that is not what happened. ThermoLife continued with some Arizona actions. For instance, in *American Fitness*, ThermoLife filed amended claims despite having suffered a previous loss. SER-0181.

More importantly, ThermoLife wanted to litigate in Arizona. Even in the BPI case, ThermoLife stuck with its Arizona preference, some eight months after ThermoLife lost in *American Fitness* in August 2019. ***Only after*** the Florida court declined to transfer BPI's case to Arizona did ThermoLife later file its complaint in Florida. And it did so before any adverse ruling on its amended Arizona complaint.

Even when ThermoLife decided, in February 2020, to file in Florida (for efficiency, judicial economy, and comity reasons), ThermoLife was hardly "searching for a way out" of Arizona, as BPI claims. Resp. Br. 14 (quoting 1-ER-0049). That flamboyant speculation is refuted by ThermoLife's undisputable actions, including its decision to continue pressing some non-BPI claims in Arizona. It moved to stay the *Musclepharm* case, pending the outcome in *ThermoLife International, LLC v. Compound Solutions, Inc.*, 848 Fed. App'x 706 (9th Cir. 2021). SER-0204-0205. ThermoLife also continued litigating against *Neogenis* case in Arizona until July 2021—some seventeen months after BPI claims ThermoLife supposedly "abandoned" its Arizona efforts.[1]

---

[1] BPI mischaracterizes the *Neogenis* case. Resp. Br. 5-6. The case remained pending in Arizona until November 1, 2021, when the defendant

BPI also ignores Appellants' transfer of its Florida action to the same judge (Judge Smith) who was handling BPI's retaliatory suit. SER-0166. Instead of seeking a judge unfamiliar with the dispute—as a typical forum shopper might do when looking for a fresh start—Appellants went to Judge Smith, consistent with their judicial-economy objectives.

Then there is *Compound Solutions*—another of the so-called "crippl[ing]" "setbacks," Resp. Br. 12. Despite having its complaint dismissed, ThermoLife stuck to its guns and prevailed on appeal.

In sum, the case timeline establishes that Appellants' move to Florida was for efficiency reasons and not any speculative wish that ThermoLife might convince Judge Smith in Florida to apply the Lanham Act

---

dismissed its claims. SER-0246. ThermoLife in fact successfully resisted the defendant's motion to transfer the case out of Arizona. Neogenis then refiled its Lanham Act claims in Texas, which were consolidated with ThermoLife's pending patent infringement action against Neogenis. *ThermoLife Int'l, LLC v. Human Power of N Co.*, No. 6:2021-cv-00144 (W.D. Tex. filed Feb. 11, 2021). The parties settled that litigation, and the accused infringer agreed to license the patents and display ThermoLife's logo on its products. BPI thus has no grounds now call it a "mostly baseless" action. *See* https://www.business-wire.com/news/home/20221005005257/en/HumanN-and-ThermoLife-Mutually-Agree-To-End-Legal-Disputes (stating that the parties "look forward to many years of cooperative synergy … that will further benefit millions of Americans across the country").

in a novel, favorable manner. BPI created this unusual circumstance by filing the second lawsuit, in Florida, and ThermoLife tried to bring efficiency to the litigations. That simple explanation avoids the district court's speculation.

## B. The Evidence Shows Only ThermoLife's Consistent Desire to Litigate Against BPI in a Single Forum

Looking beyond the timeline, the record contains other significant pieces of evidence that speak directly to ThermoLife's intent: (1) the sworn, unchallenged Kramer Declaration explicitly stating that "[t]here was no sense in litigating against BPI in two separate courts"; (2) the email expressly stating ThermoLife's intent to avoid duplicative discovery and conflicting decisions; (3) ThermoLife's efforts to keep other cases in Arizona; and (4) BPI's billing records confirming the relatedness of the two ThermoLife–BPI cases. This evidence unequivocally supports ThermoLife's stated intent to avoid duplication and inconsistent decisions.

*First*, as explained, the Kramer Declaration is unrebutted, sworn evidence confirming ThermoLife's desire to avoid the inefficiencies of "litigating against BPI in two separate courts." *See* 4-ER-0763. BPI ignores the Declaration, except for a conclusory footnote claiming it to be "irrelevant." Resp. Br. 31. It is preposterous to call the Kramer Declaration

"irrelevant" when it addresses the very issue of forum shopping. *See* Fed. R. Evid. 401.

*Second*, there is no record support for the district court's "pretext" finding. Rather than apply an accepted definition of "pretext,"[2] the court merely declared—much as BPI does on appeal—that ThermoLife's email is pretext. Saying it is does not make it so.

The pretext finding can stand only by (1) disregarding the email evidence; (2) disregarding the Kramer Declaration; (3) disregarding ThermoLife's efforts to keep other cases in Arizona; (4) rejecting the only reasonable interpretation of the case timeline; and (5) pointing to some indication that ThermoLife gained an advantage by moving its case to BPI's home court. Doing the first four would be clear error and an abuse of discretion, and BPI does not identify any meaningful difference in Lanham Act precedent between Arizona and Florida. Thus, in view of this picture, moving a case to an opponent's preferred home jurisdiction is anything but forum shopping.

---

[2] *See*, *e.g.*, Pretext, Oxford English Dictionary (3d ed. 2024) ("A reason put forward to conceal one's real purpose or object; a pretended motivation for a selfish or criminal act; an excuse or pretense.").

Avoiding the clear evidence, BPI resorts to a misleading quotation that omits six critical words. BPI quotes Appellants as stating that "'ThermoLife [had] always intended to file its claims against BPI in this District' of Florida." Resp. Br. 29 (citing 4-ER-0750). As quoted, it appears to be a damning concession that Appellants always intended to file in Florida, which would contradict their explanation in the opening brief. *See* Opening Br. 47.

The six missing words tell the whole story: "With the motion to transfer denied . . . ." 4-ER-0750. That clause makes it clear that, once ThermoLife's attempt to consolidate the cases in Arizona failed in February 2020, it only then turned to Florida. The full sentence (which BPI did not quote) is entirely consistent with Appellants' position that they wanted to litigate in a single forum. There was no "striking about-face," as BPI thinks, and ThermoLife's actions are not pretext.

*Third*, if the preceding reasons were not enough, the forum-shopping conclusion unreasonably rejects the commonalities of the Florida and Arizona cases. BPI, with empty rhetoric, says that this "dichotomy is fake," Resp. Br. 31, but can do so only by avoiding the evidence. BPI first admits that its numerous attorneys had to coordinate the two cases.

9

*Id.* All BPI can say is that the cases are not "the same." Resp. Br. 31. Of course, two cases are not the same, but even BPI thinks the two cases are similar enough to seek fees based on work done for the Florida action. BPI's billing records are affirmative evidence of ThermoLife's reasonableness in trying to avoid duplicative discovery and conflicting outcomes. *See* 2-ER-0168-0169 ("Exchange emails with G. Hillyer re issues pertaining to Florida trial and Arizona appeal."); 2-ER-0264 (Billing entries noting Mr. Hillyer's communications with Mr. Silverman, Derek Ettinger, and the "litigation team," and discussing "various observations and strategy points" with Mr. Silverman).[3]

Despite all this, the district court declared "pretext," with no analysis and no explanation about how the email, the sworn declaration, and other evidence constitute mere "pretext." 1-ER-0050. Surely, a rational pretext analysis cannot be "I know it when I see it." *See Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).

---

[3] BPI does not challenge the judicial economy associated with case consolidation.

## C.     BPI's Argument Rests on an Incomplete Definition of "Forum Shopping"

Another flaw with the district court's ruling is the lack of a clear definitional framework for "forum shopping." ThermoLife's opening brief offers that framework. Opening Br. 46. BPI does not dispute that forum shopping involves a party selecting a jurisdiction because it "feels [it] will receive the most favorable judgment or verdict." *Id.* (quoting district court case, *Black's Law Dictionary,* and law review article). Again, no evidence supports a conclusion that ThermoLife felt it would receive a better decision in Florida versus Arizona. The Lanham Act is federal law, after all, and BPI identifies no difference in the operational law.

Moreover, BPI's opportunistic maneuvering in litigation created the forum-selection conundrum. It chose to file its case in Florida, rather than in Arizona where the dispute was already pending. BPI's strategic maneuvering in response to ThermoLife's action cuts against a finding of impermissible forum shopping. *Cf. Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 846 (9th Cir. 2017) (explaining that "it typically does not constitute forum shopping . . . even where the chronology of events suggests that both parties took a somewhat opportunistic approach to the litigation" (quotations omitted)); *see also Cox v. Mariposa Cnty.*, No. 19-

11

CV-01105-AWI-BAM, 2021 WL 3743280 at *5 (E.D. Cal. 2021) (finding that the plaintiff did not engage in forum shopping when he dismissed his state-law claims to refile them as an omnibus lawsuit in federal court, noting the advantages of judicial economy and concurrent resolution of claims).

### D. The Only Case BPI Cites as Analogous Has a Starkly Different Procedural History

Finally, in a fleeting parenthetical, BPI contends that *Realtime Adaptive Streaming LLC v. Netflix, Inc.,* 41 F.4th 1372 (Fed. Cir. 2022), has a "similar procedural history" as this case. Resp. Br. 32. That conclusory assertion is wrong.

*Realtime* lacks many key facts present here. *Realtime* involved straightforward assertions of patent infringement against Netflix, albeit with the patent owner taking starkly contradictory positions on venue. 41 F.4th at 1379. The patent owner first asserted patents in Delaware and then in California (and only after receiving an adverse decision on the patents). *Id.* 1375-77. The patent owner also first "vehemently" opposed moving the litigation to and then later chose California to relitigate after receiving an adverse decision in Delaware. *Id.* at 1376. Plus, the patent owner had already received an adverse recommendation from the

Delaware district judge based on 35 U.S.C. § 101 invalidating the patents that could not be cured by amending the complaint. *Id.*

Unlike in *Realtime*, ThermoLife was trying to consolidate BPI's counterattack with ThermoLife's already-filed suit. ThermoLife first tried moving BPI's second-filed suit from Florida to Arizona. Only after Judge Smith denied that request did ThermoLife move its Arizona action to Florida, and then internally transferred it to Judge Smith. Plus, and unlike in *Realtime*, when ThermoLife filed in Florida, it amended with new, detailed allegations, and MBN joined as a plaintiff—all done in good-faith to cure any perceived gaps in the original complaint.

BPI cites to no case where a Court has found impermissible, bad-faith forum shopping with facts even remotely similar to here. Nor can it. The finding of improper forum shopping is clearly erroneous and an abuse of discretion. *See, e.g.*, *United States v. Lightfoot*, 626 F.3d 1092, 1094 (9th Cir. 2010) ("A district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact.").

13

## II.    Appellants' Litigation Was Not Vexatious Or Frivolous

The second basis undergirding the exceptional-case ruling is ThermoLife's supposed "meritless" claims and bad-faith litigation conduct.[4] The ruling cannot stand, given the uncertainty in the law, ThermoLife's partial success on appeal, its partial success in other Lanham Act cases, and its good-faith effort to perfect its Lanham Act claims.

### A.    MBN and BPI are Both on the Retailer Level, and Therefore Injury Should Have Been Presumed

A fundamental point overlooked or disregarded by BPI is MBN's presumed commercial injury caused by BPI's false advertising because MBN and BPI are both retailers selling competing products.  BPI also ignores the supporting cases cited in Appellant's brief.  *See* Opening Br. 33.  Indeed, for direct competitors—like MBN and BPI—this Court "presume[s] commercial injury." *TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 826 (9th Cir. 2011).  BPI ignores this binding precedent, as well

---

[4] The district court's bad-faith analysis appears premised primarily on the forum-shopping conclusion, *see* 1-ER-0060, and thus lacks the typical indicia of bad-faith litigation, such as intentional misrepresentations, harassing communications, and the like.  Indeed, the parties' communications lack vexatiousness, with the exception of BPI's occasional animosity bubbling through.  3-ER-0415 (BPI's former counsel expressing that BPI and he "are not particularly fond of" ThermoLife).

as other cited cases. The district court legally erred by overlooking presumed-injury precedent when deciding if MBN made a reasonable effort to plead its Lanham Act claims. The error is particularly notable because MBN's allegations essentially identically track the Court-approved allegations in *Compound Solutions*, 848 Fed. App'x at 709, and that should have been enough to avoid an exceptional-case finding.

All BPI can offer on appeal are snippets from the district court decision and a mischaracterization of MBN's conduct in this case. Specifically, BPI falsely states that this "was not the first time" MBN "pursued similar claims against similar defendants." Resp. Br. 33 (quoting 1-ER-0057). But all the other ThermoLife cases cited by BPI do not include MBN as a plaintiff. The glaring error and BPI's misstatements contribute to why the exceptional-case decision is an egregious abuse of discretion. MBN is subjected to an exorbitant fee award, even though it was not a plaintiff in any of the prior cited actions.

## B.    BPI Does Not Dispute the Unsettled Nature of the Precedent

To begin, BPI does not deny the tension and shifting precedent in caselaw covering Article III standing and proximate cause. Nor does BPI disagree with this Court's settled precedent stating that "a party does not

15

act in bad faith" when the "claim involved close questions in an unsettled area of the law." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990-91 (9th Cir. 2008); *see also* Opening Br. 27-31 (discussing numerous cases that BPI declines to address).

BPI notably offers no response to the evidence of the indirect-competitor relationship between ThermoLife and BPI. *See* Resp. Br. 38-40.[5] ThermoLife detailed how it initially alleged standing and harm based on ThermoLife-BPI indirect-competitor relationship. Opening Br. 32-38. Even BPI invoked the indirect-competitor relationship between the two, alleging at least $2,000,000 in harm in its retaliatory action. 4-ER-0878.

Nor is the argument contrary to ThermoLife's earlier position, as BPI contends. *See* Resp. Br. 39. ThermoLife of course argued that it satisfied Article III standing as an indirect competitor. But that does not moot the then-existing uncertainty within the legal framework. After all, both the district court and BPI were wrong with their conclusions on Article III standing. Had ThermoLife simply ceded to BPI's legal

---

[5] BPI noticeably fails to discuss, or even cite, the numerous cases confirming the reasonableness of ThermoLife's reliance on the indirect-competitor relationship. *See* Opening Br. 31-41.

16

misunderstanding, and not appealed, the district court's flawed standing ruling would remain unchecked.

The same holds for the proximate-cause analysis. After all, this Court wrestled with proximate cause during the same time. *See City of Oakland v. Wells Fargo & Co.,* 14 F.4th 1030 (9th Cir. 2021) (*en banc*). BPI now ignores no fewer than nine cases Appellants cited on this point. *See* Opening Br. 28-31.

Another open question is whether *Lexmark* abrogated the "commercial competition" requirement. *See Ariix*, *LLC v. NutriSearch Corp.*, 985 F.3d. 1107, 1120 (9th Cir. 2021) (Collins, J., dissenting).

BPI's multiple record citations, *see* Resp. Br. 38-39, offer no support. Appellants have consistently asserted that *Lexmark* confirmed indirect-competitor standing. To be sure, *Lexmark* added clarity by expanding Article III standing, but that expansion left gaps and gray areas that persist even now. Appellants believed, at the time, that they had pleaded more than enough for their Lanham Act claims, though the district court and this Court disagreed. In full context, Appellants' very detailed amended allegations must be assessed in the context of the still-uncertain jurisprudence.

Appellants emphasize these points not to relitigate standing or proximate cause—as BPI suggests—but to provide necessary context about Appellant's substantive arguments, as required by *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). The ultimate question is—in light of the continuing legal uncertainty about Article III standing, proximate cause, and the presumption of injury for direct competitors—whether ThermoLife's and MBN's Lanham Act claims were so egregious and deficient as to "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)." *Id.* at 554. Appellants accept this Court's affirmance on the merits, but it is nonetheless difficult to see how ThermoLife, as an indirect competitor, did not satisfy proximate cause, given the similarity with other cases. *See* Opening Br. 34-38.

Even so, the Court should also reject BPI's legally incorrect view that a court looks only to a party's "motives at the time of their conduct." Resp. Br. 38. First, the pertinent question is the objective reasonableness of Appellants' legal positions vis-à-vis the precedential fluidity. BPI wants the Court to forget about *Wells Fargo* and other cases that struggled with proximate cause. *See* Opening Br. 28. Surely an *en banc* case

18

pending during the ThermoLife–BPI dispute informs the objective rea-

sonableness of Appellants' good-faith efforts to amend the Lanham Act

claims.[6]

Finally, BPI's waiver contention again lacks merit. It is not a new

issue but is explaining why, in the Lanham Act context, Appellants' case

is not "exceptional." Observing the unsettled law is a purely legal ques-

tion that this Court can assess without extensive briefing. To punish a

party for pressing an argument—while this full Court grappled with sim-

ilar issues—would impose a severe risk on even meritorious parties.

## C. BPI's Inaccurate Assertions About ThermoLife's Litigation Conduct, Which Was Not "Frivolous"

ThermoLife's and MBN's conduct was far from vexatious. In fact,

it is similar to numerous other cases where litigants have made good-

faith-based efforts to cure the deficiencies in the pleading. *See, e.g., An-*

*drews v. America's Living Centers, LLC*, 827 F.3d 306, 314 (4th Cir. 2016)

(reversing ruling on vexatious conduct because, like Appellants', plain-

tiff's amended complaint was "much more detailed . . . with 135 para-

graphs of allegations"). Appellants plainly did not file the same

---

[6] The closest BPI comes to engaging is its conclusory assertion that the unsettled law is an "inapposite debate." Resp. Br. 40.

complaint as the first action. *Cf. Kent v. Bank of America, N.A.*, 518 Fed. App'x 514, 517 (8th Cir. 2013) (affirming fee award where "the only changes [to the amended complaint] were 'incidental'").

BPI's conflicting and inconsistent arguments and its attempt to expand the litigation are also highly relevant. *See* Resp. Br. 41. BPI incorrectly contends that Appellants "try to blame BPI for their own litigation misconduct." Resp. Br. 41. It's not about blaming BPI but about considering BPI's advancement of shifting theories, presumably based on its own confusion of the law. *See* Opening Br. 44-45. BPI's confusion underscores the difficulties the parties had in navigating the shifting precedent. If the issues were so straightforward and if Appellants claims were so extraordinarily meritless, then BPI could have dispatched those claims in short order, without transferring the case back to Arizona.[7]

BPI is correct that the injunction issue was overlooked by all involved, but BPI cannot and does not dispute the legal implication. BPI effectively concedes that—whether through inadvertence or confusion—BPI's "no competitive injury" argument for dismissing Appellants' claims

---

[7] BPI does not dispute that the transfer back to Arizona was unnecessary.

20

was legally erroneous. In the end, that is no reason to compound one error upon another. Settled law confirms that Appellants' Lanham Act claims were not so exceptional as to warrant a staggering fee award.

### D. BPI Cannot Refute that the BPI Litigation Differs Starkly From the Other Cases

BPI claims that the distinction between the present action and the other ThermoLife cases is "superficial," Resp. Br. 32, but that contention ignores that this case is the only one where MBN was a co-plaintiff. MBN's presence as a plaintiff unequivocally demonstrates Appellants' good-faith effort to remedy the perceived factual gaps the district court identified. *See, e.g.,* 3-ER-0610 (ThermoLife: "This is all that the Court's prior Order found lacking[,] and ThermoLife has added detailed allegations to its pleading on this point in overwhelming abundance.").

BPI's "superficial distinction" argument contrasts starkly with what BPI told the district court below. In its reply supporting its fees motion, BPI told the court that the addition of MBN as a plaintiff "entirely changed the analysis regarding the issue of competition given that MBN, unlike ThermoLife, competes at the same level in the supply chain as BPI." SER-0009. BPI's affirmative argument and admission

21

underscore why the district court's "same claims" and "same complaint" conclusions do not survive clear-error or abuse-of-discretion review.

MBN's participation as a co-plaintiff was thought to satisfy Article III standing and proximate-cause requirement in response to the Arizona court's ruling. ThermoLife emphasized the alleged "1:1 relationship," 3-ER-0607-0608, which *Lexmark* taught as being sufficient. MBN detailed how its products (which were ThermoLife Component Products) competed with BPI's products. These differences therefore distinguish this BPI litigation from the other ThermoLife cases.

BPI misses the point and mischaracterizes Appellants' business relationship. MBN is not ThermoLife's alter ego, as BPI incorrectly asserts. *See* Resp. Br. 42. More importantly, the point of noting BPI's incorrect assertion is that BPI was the first to make the "alter ego" assertion in this case. *See* 3-ER-0587. Additionally, Appellants' close relationship further supports Appellants' "1:1" *Lexmark* argument on indirect-competitor standing and proximate cause.[8]

---

[8] Appellants did accept the alter-ego status in the BPI Florida retaliatory action, but only for purposes of mooting a discovery dispute. BPI's reliance on that non-binding acceptance in that case further highlights the relatedness of the BPI cases and why ThermoLife repeatedly tried to

22

### E. ThermoLife's First Appeal Was Not "Exceptional"

The district court erred when it ruled that the prior appeal was "exceptional." That ruling is an abuse of discretion. For this and other reasons, fees should not have been assessed for the first appeal, which raised reasonable and partially successful claims.

First, the district court did not separately analyze the merits of the appeal. Without doing so, the district failed to apply the guidance of *Octane Fitness* to determine whether a case is "exceptional."

Second, BPI pushes for a blanket rule that fees are awarded on appeal any time that fees are awarded in the underlying district-court case. Such a blanket rule runs contrary to assessing whether the case as a whole is exceptional.

Third, BPI's blanket rule would put the Ninth Circuit at odds with other circuits. *See, e.g.*, *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 294 F.3d 227 (1st Cir. 2002).

Fourth, and most simply, the exceptional-case decision on the appeal should be reversed for the reasons detailed above. The district court

---

coordinate them in the same court, including to avoid inconsistent outcomes and arguments.

did not provide a separate analysis, and thus its exceptional-cases ruling is flawed for the same reasons as above.

Additionally, BPI's waiver point lacks merit. Appellants have consistently explained the reasonableness of their Lanham Act claims as well as the arguments advanced on appeal.

## F. Additional Misplaced Arguments by BPI

Lastly, BPI starts its argument section with several misplaced points. At page 24 of its brief, BPI misreads *Memory Lane, Inc. v. Classmates, Inc.*, 646 Fed. App'x 502, 504 (9th Cir. 2016), while simultaneously accusing Appellants of mischaracterizing the case's holding. In *Memory Lane*, the Court held that fees should be denied where the litigated trademark claims were not "exceptionally weak." 646 Fed. App'x at 504. The Court explained that the case was not "exceptional" after "application of the [appropriate] test" because the court could not "establish that Memory Lane's case was exceptionally weak on the merits, and, although ultimately unsuccessful, Memory Lane's theories of relief were not unreasonable." *Id.* The Court was plainly applying *Octane Fitness*, not merely assessing likelihood of confusion, as BPI mistakenly asserts. Resp. Br. 24. Ultimately, BPI's reading of *Memory Lane* is "not so."

Next, BPI highlights an inconsequential ambiguity in Appellants' brief. *See* Resp. Br. 24-25. BPI highlights this nit, but, as even BPI understands, the ambiguity does not change the ultimate guidance in *Nutrition Distribution LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1081 (9th Cir. 2020), namely, that seeking attorney's fees is "an uphill battle."

Third, contrary to BPI's contention, *see* Resp. Br. 25-26, ThermoLife applies the correct legal standard. The citation of *Classic Media* recognizes that, even after *Octane Fitness*, an award of attorney's fees is narrow, *i.e.*, unusual, rare, or out of the ordinary, *see* 572 U.S. at 553-54, aligned with the American Rule. District courts in the Ninth Circuit continue to cite *Classic Media* for this same proposition post-*Octane*. *See, e.g., Vericool World LLC v. Igloo Prods. Corp.*, No. 22-cv-02440-HSG, 2024 WL 3641380, at *1 (N.D. Cal. July 31, 2024) (citing *Classic Media* for "narrowly" finding "exceptional circumstances"); *Cloanto Corp. v. Hyperion Entm't CVBA*, No. C18-381-RSM, 2023 WL 3435273, at *3 (W.D. Wash. May 12, 2023) (same); *Yeager v. Airbus Group SE*, No. 8:19-cv-01793-JLS-ADS, 2021 WL 3260624, at *3 (C.D. Cal. July 1, 2021) (same); *Collaborative Continuing Educ. Council Inc. v. Starks Realty Grp. Inc.*,

No. CV-16-01641-PHX-SRB, 2018 WL 11170216, at *1 (D. Ariz. June 15, 2018) (same).  Regardless, it is a non-issue.

BPI also falsely claims that ThermoLife engages in a "nuisance-value settlement" practice.  Resp. Br. 4.  BPI has zero basis to make that statement.  This case lacks evidence about ThermoLife's licenses.  Plus, BPI knows of ThermoLife's successful business through the separate trial in Florida (with the financial details being maintained under seal).  *See* 6-ER-1288 (Ron Kramer testifying that ThermoLife sells to "the top, top, companies in the industry," including Cellucor, Glanbia Nutrition, and Iovate Sports, a "top hundred-million-dollar company").

## III.  Rule 41(d) Permits Costs Only, Not Attorney's Fees

The Court should stay true to Rule 41(d)'s text, which authorizes payment of only costs and not fees.  Courts have attempted to divine the intention behind Rule 41(d), resulting in a mishmash of atextual, policy-driven rulings.  *See* Resp. Br. 48-51.  Notably, no binding appellate precedent has held that Rule 41(d) allows fees based on an underlying Lanham Act claim.  The Ninth Circuit would be the first to do so.  It should decline that invitation here.

### A. The Interpretation of Rule 41(d) Should Not Depend on the Cause of Action

**Major Flaws in BPI's Position.** BPI's primary position on Rule 41(d) is flawed. First, it turns Rule 41(d) into a chameleon, with its colors changing from case to case. BPI wants the meaning of "costs" to be dependent on whether an underlying statute allows fees. Worse though, it seemingly ignores whether the underlying statute treats "fees" and "costs" separately, which creates textual conflict between the underlying statutes and the Federal Rules.

Second, BPI's interpretation creates an incongruous and inconsistent interpretation of the term "costs" in Rule 41(d) versus the Lanham Act. The Lanham Act, as per settled meaning, treats fees and costs distinctly. 15 U.S.C. § 1117(a). But BPI wants Rule 41(d) to engraft a different meaning of "costs" on to the Lanham Act.

Of course, as BPI details at length in its brief, various courts have issued multiple inconsistent rulings. The result is a multi-jurisdictional split, all of which could be avoided by staying true to the accepted meaning of "costs." And if the Rules Committee and Congress see fit to expand the meaning of Rule 41(d), then they can through the rulemaking

process—and not through conflicting court decisions attempting to divine the intent or purpose of a rule.

Notably, BPI cites not a single precedential appellate decision holding that Rule 41(d) authorizes fee awards through operation of an underlying Lanham Act claim. The closest is an unsigned, non-precedential decision in the Seventh Circuit. *See* Resp. Br. 50, 56.[9] Thus, if this Court were to adopt BPI's interpretation, it would be the first to do so.

Third, there is good reason why no other appellate court has adopted BPI's position: The reasoning of *Marek v. Chesny*, 473 U.S. 1 (1984), forecloses it. To be clear, the rule's plain text suffices,[10] but if the Court wants to look further, then *Marek* requires reversal. BPI misreads how *Marek* applies here.

---

[9] BPI cites the unsigned Seventh Circuit order as a "table decision," but then confusingly cites the Westlaw pagination. Resp. Br. 50. The opinion is not published in the Federal Reporter 3d. Plus, the order offers no real analysis for its decision. 2000 WL 1099678, at *5.

[10] While the *Marek* majority opinion wholly supports Appellants' desired outcome, Appellants submit that Justice Brennan's well-reasoned dissent is an ample explanation of why BPI's position "is wholly inconsistent with the history and structure of the Federal Rules, and its application to the over 100 attorney's fees statutes enacted by Congress will produce absurd variations in Rule 68's operation based on nothing more than picayune differences in statutory phraseology." 473 U.S. at 14-15.

The *Marek* Court reasoned that, "where the underlying statute defines 'costs' to include attorney's fees," then "such fees are to be included as costs for purposes of Rule 68." 473 U.S. at 9. Thus, to allow the term "costs" in Rule 68 to also include fees, *Marek*'s critical premise is that the underlying statute (there, 42 U.S.C. § 1983) must define fees as being "included" within costs. *Id.*

Here, however, that critical premise is absent. The Lanham Act treats fees and costs as distinct. *See* 15 U.S.C. § 1117(a) (identifying "costs of the action" as distinct from "reasonable attorney fees"). The Act at no point defines fees to be included within costs, or even vice versa. To the contrary, the statute specifies that "costs of the action" flow from a statutory violation, whereas attorney's fees are awardable for exceptional cases. *Id.*

The Act's distinction between fees and costs is real, and it therefore removes Lanham Act cases from *Marek*'s rationale permitting "costs" in a Federal Rule to sometimes include attorney's fees. BPI does some subtle handwaving when it says that "it should make no difference," Resp. Br. 58, but that handwaving reveals the flaw in BPI's argument. It is

Driven entirely by policy and disregards the text and structure of the rules.[11]

**Additional Flaws in BPI's Position.** BPI also makes four general points for overriding the rule's plain text. Resp. Br. 51-59. None is sufficient. First, BPI claims that, because the rules do not define "costs," the Court should interpret the term "flexibly." But undefined flexibility contravenes basic canons of statutory construction. BPI's theory would turn every statute and rule into a malleable suggestion, subject to later policy arguments. The better approach is to accept the settled distinction between "costs" versus "fees" absent textual indication to the contrary.

BPI also tries to brush aside recent Supreme Court fee-shifting cases with a flippant "[they] don't change this analysis." Resp. Br. 58. In actuality, the Supreme Court has repeatedly reemphasized the importance of staying true to a fee-shifting provision's text. *See, e.g.*, *Peter v. NantKwest, Inc.*, 589 U.S. 23, 30 (2019) ("Congress must provide a

---

[11] BPI does not cite one precedential appellate case applying *Marek*'s rationale to a Lanham Act claim. BPI misleadingly citaes *Andrews v. America's Living Centers, LLC*, 827 F.3d 306 (4th Cir. 2016), as supposedly "acknowledg[ing] that fees may be available under Rule 41(d) based on the Lanham Act." Resp. Br. 56. *Andrews* made no such ruling and dealt instead with the Fair Labor Standards Act. 827 F.3d at 308.

sufficiently 'specific and explicit' indication of its intent to overcome the American Rule's presumption against fee shifting."). In view of these recent decisions, *Marek*'s flexible approach to fee-shifting statutes may have been limited.

Second, Rule 41's structure does not support BPI's flexible interpretation. BPI points to Rule 41(a)(2), but that section uses broader language. Rule 41(a)(2) grants discretion to the court, stating that the court can condition dismissal "on terms that the court considers proper." The discretionary language has been interpreted to cover fees, costs, and other appropriate terms governing dismissal, but even if that interpretation is correct, it does not imply that the term "costs" in a separate subsection should be redefined to include fees.

To be complete, BPI's interpretation ignores the structure of the rule because it would disregard the interplay with Rule 41(a)(1)(A). Applying BPI's proposed flexibility, a plaintiff who dismisses a previous action under Rule 41(a)(1)(A) may be subject to attorney's fees for that first action by later operation of Rule 41(d), even though fees would almost never be awarded under Rule 41(a)(1)(A) in the first action.

Third, BPI asks too much of its policy argument. Many statutes and rules share the general objective of protecting parties from unnecessary litigation, but a general desired policy is not a mandate to override the text. BPI's argument logically requires interpreting "costs" to include "fees" in essentially every cost-shifting provision, if it advances a desired policy. *Cf. United States v. Great Northern Ry.*, 287 U.S. 144, 154 (1932) (Cardozo, J.) ("[W]e have not traveled, in our search for the meaning of the lawmakers, beyond the borders of the statute.").

Fourth, contrary to BPI's argument, bending the Rule 41(d)'s text does not "complement" 15 U.S.C. § 1117(a). It conflicts with § 1117(a). BPI's flexible approach creates an untenable conflict wherein Rule 41(d) "costs" means something markedly different than in the Lanham Act. Rather than complement it, BPI's Rule 41(d) interpretation radically expands the availability of Lanham Act fees. Under BPI's approach, a party will owe fees in the first action (via the combined operation of the Lanham Act and Rule 41(d)), even if the first action presented a reasonable Lanham Act claim. Rule 41(d) becomes a backdoor for fees, even when fees would have not been awarded under the Lanham Act.

### B. Rule 41(d) Does Not Have an Unwritten "Bad Faith" Exception That Transforms "Costs" into "Fees"

BPI also presses its more aggressive position that fees should be awardable under Rule 41(d) upon a showing of "bad faith."  Resp. Br. 59-61.  This approach strays further from the text, as it requires reading the following into the rule: "costs" means "also including fees but only when there is bad faith."

This approach creates a confounding scenario that eradicates the line between the rule's textual limits and the background principle that courts have the inherent authority to sanction bad-faith conduct.  If Rule 41(d) includes an implicit bad-faith exception, then it renders the rule superfluous and unnecessary.

Courts can no doubt sanction bad-faith misconduct, but that type of punitive sanction is different than a fee-shifting provision.  "An award of attorneys' fees for bad faith is punitive and the penalty can be imposed 'only in exceptional cases and for dominating reasons of justice." *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1298 (9th Cir. 1982) (quotation omitted)).

The argument's weakness may be a reason BPI disavowed it before the district court.  SER-0049 ("As an initial matter, whether or not

ThermoLife engaged in [bad faith] forum shopping is irrelevant to whether the requirements of Rule 41(d) are met."). Regardless of BPI's disavowal, the argument should be rejected.

## IV. The Amount of Fees Awarded Is Unreasonable

Even if the Court disagrees with Appellants' preceding arguments, the Court should vacate the amount awarded. It does not reflect a "reasonable" amount of fees, as required by the statute.

As a first point, BPI agrees that the district court failed to reduce the total fee award by the $31,868 for BPI's excessive billing on its multiple motions to dismiss. Resp. Br. 66. This plain error should be reversed, and the total fee award should be reduced accordingly. Curiously, even though BPI agrees with this error, it still argues that no reduction is necessary. *Id.*

Second, even with this reduction, BPI's fee award of over $95,000 for its work on attorney's fees motions remains excessive. This amount accounts for over a fifth of the total award—plainly excessive for a case not passing the motion-to-dismiss stage. Perhaps only a company about to declare bankruptcy would ask its attorneys to spend so much time on

a fee motion that it might lose—knowing that BPI would not have to pay after its bankruptcy was filed.

Third, the district court's discount of only $7,035 out of BPI's $530,322 request for non-Lanham Act work is an abuse of discretion. Resp. Br. 65. The non-Lanham Act claims were three out of the four claims asserted by BPI. Yet BPI would want this Court to believe that those three claims accounted for only 1.3% of BPI's work. This generous accounting allows a party to reap a windfall by including one claim with a fee-shifting provision with numerous other claims, and then try to lump all the work under the fee-shifting claim in order to maximize a fee request. Particularly with the block billing here, that gamesmanship is why courts will frequently allocate a few award on a per-claim basis. *See, e.g.*, *Prunty v. Vivendi*, 195 F. Supp. 3d 107, 117 (D.D.C. 2016).

BPI also does not fully dispute the excessiveness of BPI's billing on its three motions to dismiss. BPI requested fees for over 160 hours of work spent on three motions to dismiss, all responding to what "the same claims" or "essentially the same claims," as BPI submits. Resp. Br. 1, 14. If the complaints were truly "the same," then BPI's counsel had no reason to bill or be awarded almost $100,000 for what it effectively calls the same

complaint.  They had minimal work to file the second and third dismissal motions.  BPI mischaracterizes the amended complaints as "superficially complex."  Resp. Br. 41.  BPI can't say the amended complaints are the same for the exceptional-case analysis and then argue they are so complex as to require over $100,000 of work to address.

The fee award should be further reduced for other unsuccessful work, such as work on the debatable Rule 41(d) issue and BPI's failed § 1927 motion.

## V.    Conclusion

The Court should reverse the exceptional-case and Rule 41(d) rulings, and, if necessary, vacate the award of fees.

Date: November 1, 2024                     Respectfully submitted,

By: */s/ Matthew J. Dowd*
Matthew J. Dowd
Dowd Scheffel PLLC
1717 Pennsylvania Avenue, NW
Suite 1025
Washington, D.C. 20006
mdowd@dowdscheffel.com

*Counsel for Appellants*
*ThermoLife International, LLC and*
*Muscle Beach Nutrition, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 2023-15903

I am the attorney or self-represented party.

**This brief contains** | 7,000 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Matthew J. Dowd | **Date** | 11/01/2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*